COMMONWEALTH *vs.* SCOTT HANRIGHT.

Middlesex. May 6, 2013. - August 28, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Joint Enterprise. Homicide. Felony-Murder Rule. Intent. Robbery. Assault and Battery. Assault and Battery by Means of a Dangerous Weapon. Assault and Battery on Certain Public Officers and Employees. Firearms. Practice, Criminal, Capital case, Dismissal, Instructions to jury. Probable Cause. Evidence, Joint venturer, Intent.*

A Superior Court judge erred in granting the criminal defendant's motion to dismiss indictments charging the defendant with assault and battery by means of a deadly weapon against a person sixty years or older, assault and battery on a public employee, assault by means of a dangerous weapon, and discharge of a firearm within 500 feet of a building (offenses allegedly committed by the defendant's joint venturer outside a department store as the joint venturer attempted to flee the scene of an armed robbery), and to dismiss so much of an indictment charging murder in the first degree (also allegedly committed by the joint venturer) as included any theory of murder other than felony-murder, where the defendant could be liable for the offenses committed by the joint venturer if the Commonwealth proves beyond a reasonable doubt that the defendant participated in, and intended, such crimes [307-310]; and where sufficient evidence was presented to the grand jury to support a finding that the defendant intentionally participated as a joint venturer in the assault and battery crimes on a person sixty years or older, the assault crimes by means of a dangerous weapon, and the discharge of a firearm within 500 feet of a building [310-313], as well as sufficient evidence of the defendant's participation and intent as a joint venturer to support the indictment charging murder on theories of deliberate premeditation and extreme atrocity or cruelty [313-314].

Discussion of jury instructions to be given at the trial of a criminal defendant as a joint venturer for offenses committed by the coventurer while attempting escape. [314-315]

INDICTMENTS found and returned in the Superior Court Department on March 31, 2011.

A motion to dismiss was considered by *Thomas P. Billings*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Casey E. Silvia*, Assistant District Attorney (*Marian T. Ryan*, District Attorney, with her) for the Commonwealth.

*John P. Osler*, Committee for Public Counsel Services, for the defendant.

SPINA, J. A grand jury returned twenty-two indictments against the defendant, Scott Hanright, including indictments charging murder in the first degree and various counts of masked armed robbery. The charges arose out of a robbery, perpetrated by Domenic Cinelli, of a jewelry counter at a department store in Woburn on December 26, 2010, and from other offenses Cinelli committed while attempting escape, including shooting a police officer to death. The Commonwealth is proceeding against the defendant as a joint venturer and coconspirator. In relevant part,[1] the defendant moved to dismiss indictments relating to Cinelli's offenses committed outside the department store as Cinelli tried to flee the scene of the armed robbery on the ground that the charges were not supported by sufficient evidence.[2] See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). These charges include: (1) assault and battery by means of a deadly weapon against a person over sixty years or older against Officer John Maguire, G. L. c. 265, § 15A; (2) assault and battery on a public employee against Maguire, G. L. c. 265, § 13D; (3) assault by means of a dangerous weapon against Officer Glenn Grammar, G. L. c. 265, § 15B; (4) assault by means of a dangerous weapon against Douglas Matney, G. L. c. 265, § 15B; and (5) discharge of a firearm within 500 feet of a building, G. L. c. 269, § 12E. In addition, the defendant moved to dismiss so much of the indictment alleging the murder of Maguire as included any theory of murder other than felony-murder. The motion judge allowed the portion of the defendant's motion that sought dismissal of the listed charges and so much of the murder indictment as included theories of deliberate premeditation and extreme atrocity or cruelty because the judge determined that

[1]The defendant also moved to dismiss the charge of murder in the first degree based on a theory of felony-murder on the ground that the felony-murder rule is unconstitutional. The motion judge denied that portion of the defendant's motion, and the defendant does not press his challenge to the constitutionality of the felony-murder rule on appeal. He also concedes that the evidence presented to the grand jury established probable cause to support the felony-murder charge and, therefore, does not challenge that theory of murder.

[2]The defendant does not challenge the sufficiency of the evidence to prosecute him as a joint venturer to the underlying robbery offenses committed by Domenic Cinelli when Cinelli was inside the store.

the Commonwealth presented no evidence that the defendant either participated in or intended any of the events after Cinelli left the department store following the robbery. See *Commonwealth* v. *McCarthy*, *supra*. The Commonwealth appealed, and we transferred the case to this court on our own motion. We reverse the portion of the motion judge's decision that dismissed the challenged indictments and precluded the Commonwealth from proceeding at trial on all three theories of murder.

1. *Facts.* We recount the evidence presented to the grand jury in the light most favorable to the Commonwealth. See *Commonwealth* v. *Walczak*, 463 Mass. 808, 812 (2012) (Lenk, J., concurring). The defendant lived with his grandmother and met Cinelli, whom the defendant knew to have been imprisoned for over three decades for robbing jewelry stores, when Cinelli became romantically involved with the defendant's grandmother. The defendant, aged nineteen at the time, did not own an automobile and did not drive, and Cinelli began driving the defendant to work. Approximately one month before the robbery, Cinelli mentioned the idea of robbing the jewelry counter while he and the defendant were out driving. Cinelli told the defendant that the plan was to go into the store with a gun and a mask, approach the jewelry counter, and demand money or jewelry. He also stated that he preferred to commit the robbery during a snow storm. The defendant knew that Cinelli had a gun because Cinelli had showed the defendant a gun when the two were in Cinelli's apartment. On several occasions following the initial conversation about robbing the jewelry counter, Cinelli and the defendant drove possible escape routes. A few days before the robbery, Cinelli told the defendant that he had gone to the store by himself with the intention of robbing it, but changed his mind because police officers were present.

A blizzard dropped over a foot of snow on the evening of the robbery. Cinelli telephoned the defendant and asked if he wanted to go for a ride. Cinelli arrived at the defendant's home shortly thereafter, and the defendant went outside and got into Cinelli's automobile. The defendant realized that Cinelli intended to commit the robbery that evening because Cinelli was wearing a fake beard and a ski mask, and also because of the snow storm. The defendant later told the police that he did not see a gun in

the automobile, but that he "just knew" that Cinelli was armed and was afraid that Cinelli would shoot someone.

Cinelli drove to the store and parked the car on the intended escape route. He left the key in the ignition and told the defendant to leave his door unlocked. Cinelli then gave the defendant a ski mask (which the defendant later told the police he put on his head but did not pull down over his face) and told the defendant that he was to run back to the car after Cinelli completed the robbery. Both Cinelli and the defendant left their cellular telephones in the automobile. The two then walked to the department store, and the defendant waited outside while Cinelli went inside. The defendant later denied that he was asked to, or did, play an active role in the robbery, and specifically denied that he was to serve as a lookout. He claimed that he merely went along because he was afraid of Cinelli, and because he hoped to share in some of the proceeds from the robbery.

Inside the store, Cinelli demanded jewelry from several department store employees, and collected it in a duffle bag. Responding to a telephone call that a robbery was in progress, Officer Grammar arrived on the scene. He observed the defendant standing outside, but then focused his attention on Cinelli, who was coming out of the department store carrying the duffle bag. Cinelli pointed a gun in Grammar's direction, and a chase ensued. Matney, who was driving a snow plow, saw the chase and maneuvered the snow plow to block Cinelli's exit. Although Matney did not observe a gun at that time, Cinelli raised his arm toward Matney as if preparing to shoot, causing Matney to raise the bucket on the snow plow to protect himself. Officer Maguire then arrived on the scene and joined in the chase. Upon seeing Cinelli, Maguire got out of his police vehicle and a gunfight ensued. Both Cinelli and Maguire died from gunshot wounds.

While the police were pursuing Cinelli, the defendant threw his ski mask into the trash and walked away from the scene of crime. As he was walking, he saw an elderly woman sweeping her porch and asked if he could use her telephone. He telephoned his aunt and asked for her boy friend's telephone number, and then telephoned the boy friend and asked to be picked up in front of a nearby store. The defendant was arrested before the boy friend arrived.

2. *Joint venture liability for escape-related crimes.* The issue in this appeal is whether the defendant may be held liable on a theory of joint venture for the offenses Cinelli committed outside the store while attempting escape on the ground that such crimes were part of the over-all scheme of the underlying armed robbery. We conclude that the defendant may be liable for Cinelli's escape-related crimes, but only if the Commonwealth proves beyond a reasonable doubt that he participated in, and intended, such crimes.

The felony-murder rule "imposes criminal liability for homicide on all participants in a certain common criminal enterprise if a death occurred in the course of that enterprise."[3] *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982), quoting *Commonwealth* v. *Watkins*, 375 Mass. 472, 486 (1978). To establish liability for felony-murder on a theory of joint venture the Commonwealth must prove "that a homicide occurred in the commission or attempted commission of that felony[.] [C]omplicity in the underlying felony is sufficient to establish guilt of murder in the first or second degree . . . if the homicide *followed naturally and probably* from the carrying out of the joint enterprise" (emphasis added). *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976). "The effect of the felony-murder rule," both for principals and accomplices, "is to *substitute the intent* to commit the underlying felony for the malice aforethought required for murder" (emphasis added). *Commonwealth* v. *Matchett, supra.* See *Commonwealth* v. *Housen*, 458 Mass. 702, 708 (2011); *Commonwealth* v. *Ambers, supra.* Consequently, a defendant may be liable for felony-murder on a theory of joint venture not because he or she shared with the principal the requisite mental state for murder, but because he or she shared with the principal the intent to commit the underlying felony, which satisfies the intent requirement for felony-murder. See *Commonwealth* v. *Housen, supra*; *Commonwealth* v. *Ambers, supra.*

Outside the narrow context of joint venture felony-murder,

---

[3]We have recognized that escape efforts may be attributed to the underlying, predicate felony for the purposes of the application of the felony-murder doctrine. See *Commonwealth* v. *Rogers*, 459 Mass. 249, 252-256, cert. denied, 132 S. Ct. 813 (2011); *Commonwealth* v. *Dellelo*, 349 Mass. 525, 529-530 (1965).

we have held that joint venture liability should not extend to unintended crimes, even if such unintended crimes are the "natural and probable" consequences of a crime in which a defendant participated as a joint venturer. See *Commonwealth* v. *Hogan*, 379 Mass. 190, 193 (1979), and cases cited; *Commonwealth* v. *Richards*, 363 Mass. 299, 306-307 (1973). In *Commonwealth* v. *Richards, supra* at 305-308, we considered whether a joint venturer in an armed robbery may be liable for a coventurer's crime of assault with intent to murder a police officer who arrived on the scene where the assault was committed *in the course of*, as opposed to *during escape from*, the armed robbery. We "firmly rejected" the argument that a joint venturer should be liable for "any crime committed by any of his partners which follows naturally and probably from the carrying out of the enterprise." *Id.* at 306. We concluded that "guilt of the accessory is established when it is . . . shown that he intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Id.* at 307-308. See *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 612-613 (1973), quoting *Commonwealth* v. *Richards, supra* at 307-308. See also *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009). "We have not extended the concept of general complicity [of an accomplice] applicable in the area of felony-murder to other crimes," and do not do so here.[4] *Commonwealth* v. *Hogan, supra*.

This case presents a useful illustration of the divergent workings of the theories of joint venture liability for felony-murder as compared to joint venture liability for other crimes perpetrated by a coventurer while attempting escape from a crime in which a defendant participated as a joint venturer. Here, Cinelli shot and killed Maguire as Cinelli attempted to escape following the armed robbery. Consequently, a jury may find the defendant liable for Maguire's death by virtue of the defendant's complicity in the underlying armed robbery pursuant to the felony-murder

---

[4] In its brief, the Commonwealth argued that the defendant need not have shared with Cinelli the intent to commit the escape-related crimes to be held liable on a theory of joint venture. At oral argument, however, the Commonwealth appears to have conceded its burden to establish intent as to each of Cinelli's escape-related crimes.

rule; they need not find that the defendant specifically intended the harm to Maguire.[5] See *Commonwealth* v. *Housen, supra*; *Commonwealth* v. *Netto,* 438 Mass. 686, 702 (2003). Cinelli also committed multiple other offenses in the course of his escape that did not result in death, including several additional offenses against Maguire, as well as offenses against others who were involved in the chase and survived. The intent to commit armed robbery, although sufficient to support liability for felony-murder on a theory of joint venture, is insufficient to support liability for these additional offenses. See *Commonwealth* v. *Richards, supra* at 306-308. Admittedly, our rule of imputed intent depends on whether the victim dies from a crime perpetrated against him (or, more precisely, whether the Commonwealth pursues a murder conviction on a theory of felony-murder, see note 5, *supra*). To that end, we simply note that the felony-murder rule operates according to a unique set of principles. As we stated in *Commonwealth* v. *Richards, supra* at 307, "[a] broad conception of complicity is indeed at work in the special field of so called felony-murder, but there is no basis for importing it . . . where murder did not occur." See 2 W.R. LaFave, Substantive Criminal Law § 13.3(b), at 363 (2d ed. 2003) (LaFave).

We are well aware that we are in the minority of jurisdictions that have "expressly rejected the 'natural and probable con-sequences' doctrine" of joint venture liability outside the joint venture felony-murder context.[6] *Gonzales* v. *Duenas-Alvarez,* 549 U.S. 183, 190-191 (2007). See LaFave, *supra* at § 13.3(b), at 361. Cf. Model Penal Code and Commentaries § 2.06(3) and comment at 310-313 (rejecting "natural and probable" con-

[5]The Commonwealth also wishes to proceed against the defendant for joint venture murder in the first degree on the theories of deliberate premeditation and extreme atrocity or cruelty. To succeed on either theory, unlike under a theory of joint venture felony-murder, the Commonwealth must prove that the defendant intended the harm to Maguire. See *Commonwealth* v. *Earle,* 458 Mass. 341, 346 (2010); *Commonwealth* v. *Richards,* 363 Mass. 299, 306-308 (1973).

[6]For other jurisdictions that follow a similar approach to joint venture liability outside the limited context of felony-murder, see *Gonzales* v. *Duenas-Alvarez,* 549 U.S. 183, at 196 Appendix B (2007), and 2 W.R. LaFave, Substantive Criminal Law § 13.3(b), at 363 n.35 (2d ed. 2003) (LaFave), and sources cited.

sequences doctrine); LaFave, *supra* at § 13.3(b), at 363 n.40. Nevertheless, we remain committed to the view that

> "general application of the 'natural and probable conse-quence' rule of accomplice liability is unwarranted. A's guilt as an accomplice to one crime should not per se be a basis for holding A accountable for a related crime merely because the latter offense was carried out by A's principal, for this as well would result in A's guilt of a crime as to which he did not have the requisite mental state."

LaFave, *supra* at 362-363. Thus, we do not dispense with the intent requirement for joint venture liability for each of a co-venturer's escape-related crimes. Joint venture liability for escape-related crimes is not coextensive with joint venture li-ability for escape-related felony-murder.[7] See *Commonwealth* v. *Richards*, 363 Mass. 299, 306-307 (1973); *Commonwealth* v. *Fillippini*, *supra*.

3. *Sufficiency of the evidence.* Of course, just because it is not sufficient for joint venture liability (with the exception of li-ability for joint venture felony-murder) that a coventurer's crimes follow "naturally and probably" from the underlying joint venture does not mean that the Commonwealth cannot charge a joint venturer for a coventurer's crimes committed while at-tempting escape. See *Commonwealth* v. *Richards*, *supra*; *Com-monwealth* v. *Fillippini*, *supra*. The Commonwealth simply must establish that the joint venturer knowingly participated in

---

[7]Nor does the scope of joint venture liability extend, as the Commonwealth argues, to the unintended crimes of a coventurer committed "in furtherance of" a joint venture. We have used the phrase "in furtherance of" to delineate the scope of the joint venture exception to the rule against hearsay, and to determine whether an act of a defendant constitutes participation in a joint venture. See *Commonwealth* v. *Bright*, 463 Mass. 421, 426 (2012); *Com-monwealth* v. *Borans*, 379 Mass. 117, 146 (1979); *Commonwealth* v. *Blow*, 370 Mass. 401, 407-408 (1976). Such language is not used to define the scope of the criminal liability of an accomplice. Moreover, in the related conspiracy context, we have rejected the view that members of a conspiracy are liable for the substance offenses of coconspirators committed "in furtherance of" the conspiracy. *Commonwealth* v. *Richards*, *supra* at 306. "Under the better view, one is not an accomplice to a crime merely because that crime was committed in furtherance of a conspiracy of which he is a member, or because that crime was a natural and probable consequence of another offense as to which he is an accomplice." LaFave, *supra* at § 13.3, at 356.

the crime with the intent that such crime occur. *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009). *Commonwealth* v. *Richards*, *supra* at 307-308. Thus, we turn to the issue whether the challenged indictments were supported by probable cause. See *Commonwealth* v. *Moran*, 453 Mass. 880, 883-884 (2009); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The motion judge granted the defendant's motion to dismiss the indictments for crimes Cinelli committed outside the store while attempting escape (assault and battery by means of a deadly weapon against a person sixty years or older; assault and battery on a public employee; two counts of assault by means of a dangerous weapon; and discharge of a firearm within 500 feet of a building), and so much of the indictment as alleges murder in the first degree on any theory other than felony-murder. He concluded that the evidence is insufficient as to both the defendant's participation in and intent to commit each offense to sustain the indictments. See *Commonwealth* v. *Zanetti*, *supra*; *Commonwealth* v. *Richards*, *supra*. We have reviewed the evidence presented to the grand jury and conclude, contrary to the motion judge, that there is sufficient evidence to support the challenged indictments. Therefore, we reverse the portion of the motion judge's order that grants the defendant's motion to dismiss the challenged indictments and precludes the Commonwealth from proceeding at trial on the theories of murder based on deliberate premeditation and extreme atrocity or cruelty (in addition to felony-murder). Whether the defendant knowingly participated in, and harbored the intent required for, the escape-related crimes is a question appropriately left for trial.[8] *Commonwealth* v. *Zanetti*, *supra*. *Commonwealth* v. *Richards*, *supra*.

Probable cause to sustain an indictment is a decidedly low standard. See *Commonwealth* v. *Moran*, *supra*; *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). See also *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949), and cases cited. "[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" for the crime charged. *Commonwealth* v. *Moran*, *supra* at 883, quoting *Commonwealth* v. *McCarthy*, *supra*. Prob-

---

[8] We offer no comment concerning whether the evidence is sufficient to defeat a motion for a required finding of not guilty.

able cause has been defined as "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972), quoting *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964). Of course, "[t]he grand jury must be presented with evidence on each of the . . . elements" of each offense charged in order for an indictment to stand. *Commonwealth* v. *Moran*, *supra* at 884. Where, as here, the liability of a joint venturer is at issue, the Commonwealth must present the grand jury with evidence that the defendant both participated in, and shared the requisite mental state for, each crime charged. *Commonwealth* v. *Zanetti*, *supra*. *Commonwealth* v. *Richards*, *supra*. A joint venturer may share with a principal a willingness to perpetrate other crimes, whether "in the actual commission [of the underlying joint venture] or getting away after the crime was committed." *Commonwealth* v. *Richards*, *supra* at 305. As concerns a joint venturer's requisite intent, "it would suffice if the purpose . . . in the mind of the accessory was a *conditional or contingent* one, a willingness to see [a crime] take place should it become necessary to effectuate the [underlying joint venture] *or make good an escape*" (emphases added). *Id.* at 308. See *Commonwealth* v. *Scanlon*, 373 Mass. 11, 17 (1977) ("conditional or contingent intent"); *Commonwealth* v. *Ferguson*, 365 Mass. 1, 8 (1974) (same). In *Commonwealth* v. *Ferguson*, *supra*, we stated that "if the defendant had knowledge of and thus acquiesced in the carrying of the [weapon], he could be found to have been willing to see the [weapon] used as a means to the desired end."

Here, the grand jury had probable cause to find that the defendant intentionally participated as a joint venturer in the assault and battery crimes against Maguire, the assault crimes against Grammar and Matney, and the discharge of a firearm. See *Commonwealth* v. *Richards*, *supra*. Certainly, the evidence suggests that Cinelli was the principal in the armed robbery and the escape-related offenses, and that the defendant played a relatively minor role in the over-all scheme. Cf. *id.* Nevertheless, there was evidence that the defendant participated in the planning of an escape: he and Cinelli mapped out escape routes several times in the month leading up to the robbery. Although he denies

it, evidence suggests that the defendant was positioned as a lookout during the commission of the armed robbery. See *Commonwealth* v. *DeJesus*, 48 Mass. App. Ct. 911, 911-912 (1999). As such, the grand jury could have inferred that there was probable cause to believe the defendant was "in a position to render aid," both in the armed robbery and in the subsequent escape. *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Compare *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 793 (1975) (position ready to aid), with *Commonwealth* v. *Perry*, 357 Mass. 149, 150, 152 (1970) (defendant, who was one block away, was not "in any location or position where he could aid in any way in the commission of the crimes"). Perhaps of greatest significance, the defendant admitted that he knew Cinelli had a gun and that the plan was that Cinelli would use the gun to perpetrate the armed robbery. See *Commonwealth* v. *Ferguson, supra*; *Commonwealth* v. *Padgett*, 44 Mass. App. Ct. 359, 363 (1998). In an interview with police following his arrest, the defendant also acknowledged his fear, notwithstanding Cinelli's alleged assurances to the contrary, that Cinelli might hurt someone. Moreover, there was evidence that the defendant knew that Cinelli recently had been paroled following more than three decades of imprisonment for robbing jewelry stores. Thus, the grand jury could infer that the defendant knew that Cinelli was prepared to shoot to effectuate his escape and avoid returning to jail,[9] and that the defendant shared with Cinelli a willingness to see the assault and battery and firearm crimes occur were they to become necessary to effectuate the joint plan, including both the underlying robbery and the subsequent escape. See *Commonwealth* v. *Ferguson, supra*; *Commonwealth* v. *Richards*, 363 Mass. 299, 305 (1973); *Commonwealth* v. *Fillippini*, 1 Mass. App. Ct. 606, 612-613 (1973).

Likewise, the Commonwealth presented sufficient evidence of the defendant's participation and intent to support the indictment for Maguire's murder insofar as it advances theories of deliberate premeditation and extreme atrocity or cruelty. To sup-

---

[9]After his arrest following the robbery, the defendant told police that he asked Cinelli if Cinelli was worried about violating his parole and going back to jail, and that Cinelli indicated that he knew he would spend the rest of his life in jail if he were caught.

port a murder indictment on a theory of joint venture (other than for joint venture felony-murder), the Commonwealth must present evidence to the grand jury that the defendant (1) aided, encouraged, planned, participated in, or stood ready to assist Cinelli in killing Maguire, and (2) intended Maguire's death, grievous bodily harm to him, or any act that a reasonable person would know created a plain and strong likelihood of death.[10] See *Commonwealth* v. *Earle*, 458 Mass. 341, 346 (2010); *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009). As stated previously, the Commonwealth presented evidence that the defendant was positioned such that he could render aid in the underlying armed robbery and subsequent escape, and that the defendant participated in the planning of the escape. Moreover, there was sufficient evidence to establish probable cause that the defendant shared the requisite intent, even if conditional or contingent, to see a person die if such were necessary to effectuate Cinelli's escape. The grand jury heard evidence that the defendant acquiesced in Cinelli's carrying of a gun and knew that the consequences of capture would be particularly severe for Cinelli, considering his criminal history. See *Commonwealth* v. *Richards*, *supra*; *Commonwealth* v. *Padgett*, *supra* (defendant knew coventurer "would use all force necessary to escape"). The subsequent question, whether the Commonwealth can sustain its burden of proof beyond a reasonable doubt as to joint venture liability for each of the challenged indictments and for murder on the theories of deliberate premeditation or extreme atrocity or cruelty, is one we leave for trial.

Assuming the Commonwealth decides to proceed on the challenged indictments and theories of murder in the first degree other than felony-murder, we lastly consider the requisite jury instructions. In light of the intent required to establish the defendant's liability on a theory of joint venture for Cinelli's crimes committed while attempting escape and that did not result in death (assault and battery by means of a deadly weapon against a person sixty or over; assault and battery on a public employee; two counts of assault by means of a dangerous weapon; and

---

[10]Murder in the first degree (other than on a felony-murder theory) requires proof of these elements and also of either deliberate premeditation or extreme atrocity or cruelty. *Commonwealth* v. *Earle*, *supra* at 346 n.7.

discharge of a firearm within 500 feet of a building), the trial judge should instruct the jury on each crime individually and on the defendant's liability for aiding or abetting with respect to each crime individually. See *Commonwealth* v. *Zanetti, supra*; *Commonwealth* v. *Richards, supra* at 305-306. Similarly, as concerns the murder in the first degree of Maguire based on deliberate premeditation and extreme atrocity or cruelty, the trial judge should instruct the jury on the elements of murder and on the defendant's liability on a theory of aiding or abetting. See *Commonwealth* v. *Zanetti, supra*; *Commonwealth* v. *Richards, supra*. The trial judge may also instruct the jury on contingent or conditional intent,[11] and should make clear that the intent to commit the underlying armed robbery is not sufficient to establish liability on any of the challenged indictments. See *Commonwealth* v. *Hogan*, 379 Mass. 190 (1979); *Commonwealth* v. *Scanlon*, 373 Mass. 11, 17 (1977); *Commonwealth* v. *Richards, supra*. As to the charge of murder in the first degree of Maguire on the theory of felony-murder with armed robbery as the predicate felony, the trial judge should instruct the jury on felony-murder liability, including that a joint venturer's shared intent to commit the underlying armed robbery substitutes for the malice required for murder. See Model Jury Instructions on Homicide 13-17, 50 (2013).

4. *Conclusion.* We reverse the grant of the defendant's motion to dismiss the indictments that charge the defendant with the assault and battery and firearm crimes perpetrated by Cinelli during his flight following the armed robbery. We likewise reverse the grant of the defendant's motion to dismiss that prevents the Commonwealth from proceeding at trial on all three theories of murder.

*So ordered.*

---

[11]In *Commonwealth* v. *Scanlon*, 373 Mass. 11, 18-19 n.1 (1977), we determined that the following instruction on the requisite intent of an accomplice was proper: "[I]t is not enough if [the defendant] merely thought a crime might or may be committed, that the victim might get killed. Even if that happened . . . it is not enough. He has to know that there is more than a possibility or more than a 'maybe.' He has to know that there is a substantial chance that the victim will be killed."