Gants, C.J.
(concurring, with whom Lenk, Hines, and Budd, JJ., join). I agree with the court that, where the defendant’s only *825 participation in the crimes was to provide a firearm and hooded sweatshirts to his friends, knowing they intended to use them in the commission of an armed robbery, convictions of murder in the first degree on the theory of felony-murder are not consonant with justice. I write separately to explore how our common law of felony-murder led to convictions of murder in the first degree that are not consonant with justice, and to explain why it is time for us to narrow the scope of liability for that common-law crime. I believe that, in the future, a defendant should not be convicted of murder without proof of one of the three prongs of malice: that he or she intended to kill or to cause grievous bodily harm, or intended to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result. I also believe that we should abandon the fiction of constructive malice — that where a killing occurs in the commission of a felony, the intent to commit the felony is sufficient alone to establish malice.
As noted in the opinion of the court, following the issuance of this concurring opinion, which is joined by three other Justices, a conviction of felony-murder will require a finding of actual malice, not merely constructive malice. As a result, felony-murder will no longer be an independent theory of liability for murder. Rather, felony-murder will be limited to its statutory role under G. L. c. 265, § 1, as an aggravating element of murder, permitting a jury to find a defendant guilty of murder in the first degree where the murder was neither premeditated nor committed with extreme atrocity or cruelty but was committed in the course of a felony punishable by life imprisonment.
The court correctly concludes that, under our existing common law, the defendant committed felony-murder in the first degree: he knowingly aided and abetted the commission of a life felony (attempted armed robbery and home invasion), in which his accomplices killed two victims. Under our existing common law of felony-murder, it is legally irrelevant that the defendant was not present at the scene of the attempted armed robbery; he is criminally responsible for every act resulting in death committed by his accomplices during the attempted commission of the armed robbery. See Commonwealth v. Tejeda, 473 Mass. 269, 272 (2015). It is also legally irrelevant that he did not share his accomplices’ intent to kill or to cause grievous bodily harm during the attempt; his intent to commit the armed robbery substitutes for the malice aforethought generally required for *826 murder. Id. Because the underlying crimes were both felonies punishable by life in prison, the jury properly were not instructed on felony-murder in the second degree, because the evidence did not permit such a verdict. See Commonwealth v. Paulding, 438 Mass. 1, 10 (2002). In short, under our existing common law of felony-murder, the jury reached the correct verdicts. Indeed, guilty verdicts of murder in the first degree on the theory of felony-murder are the only verdicts they reasonably could have reached on this evidence. It is not the fault of the jury that the verdicts they reached are not consonant with justice; it is the fault of our common law of felony-murder.[1]
We have long recognized that ‘“[t]he common law felony-murder rule is of questionable origin.” Commonwealth v. Matchett, 386 Mass. 492, 503 n.12 (1982). A look at the early English law reveals that there was no precedent in English cases for what we now refer to as ‘“felony-murder.” Professor Guyora Binder, in an exhaustive analysis of the origins of American *827 felony-murder rules, concluded:
“By the time of the American Revolution, the rule that an accidental death in the course of any felony was murder had become a standard theme in scholarly writing about the common law of homicide .... Yet no English court had ever actually applied such a rule. ... By the end of the eighteenth century, some judges thought cofelons were automatically implicated in any murder committed in attempt of a felony, but most judges required participation in or encouragement of the act causing death.”
Binder, The Origins of American Felony Murder Rules, 57 Stan. L. Rev. 59, 98 (2004). An analysis of early American cases leads to a similar conclusion — in most instances murder liability was imposed only where there was independent proof of malice. See id. at 193-194.
The absence of any clear preexisting concept of “felony-murder” also becomes evident when examining the provenance of the Massachusetts murder statute. In 1784, Massachusetts enacted a statute providing “[tjhat whosoever shall commit wilful murder, of malice aforethought, . . . shall suffer the pains of death.” St. 1784, c. 44. It was only in 1858 that the Massachusetts Legislature established two degrees of murder, and provided that the degree of murder is to be found by the jury. St. 1858, c. 154, §§ 1, 2. “The legislative documents that precede the enactment of St. 1858, c. 154, suggest that murder was divided into degrees largely to mitigate the harshness of the common law rule imposing a mandatory death penalty on all murderers.” Commonwealth v. Dickerson, 372 Mass. 783, 803 (1977) (Quirico, J., concurring). Murder in the first degree, punishable by death, was defined as “[mjurder, committed with deliberately premeditated malice aforethought, or in the commission of an attempt to commit any crime punishable with imprisonment for life, or committed with extreme atrocity or cruelty.” St. 1858, c. 154, § 1. This statute is described by Professor Binder as a “felony aggravator statute,” in that it provided that where a defendant committed “murder” and where that murder was committed in the attempt to commit a life felony, the murder was murder in the first degree regardless of whether it was premeditated or committed with extreme atrocity or cruelty. See Binder, supra at 120. The statute did not define “murder” and did not declare that a person is guilty of murder *828 whenever a death occurs during the commission of a felony; the elements of murder liability continued to rest in the domain of the common law. See People v. Aaron, 409 Mich. 672, 721 (1980) (‘“[t]he use of the term ‘murder’ in the first-degree statute requires that a murder must first be established before the statute is applied to elevate the degree”).
It is not surprising that the first Massachusetts statute that refers to murder in the commission of a felony treated it simply as an aggravating element that made the murder worthy of the death penalty. In the vast majority of the cases where a victim was killed during the commission of a felony, the defendant had killed the victim in furtherance of the crime or to facilitate his or her escape, and intended to kill or to commit grievous bodily harm, so there was no need for a distinct theory of felony-murder that substituted the intent to commit the underlying felony for the malice necessary for a murder conviction. In these cases, the killing already met the definition of murder. See Binder, supra at 65-66. Nor is it surprising that this statute included only “an attempt to commit any crime punishable with imprisonment for life,” rather than the commission of a completed crime.[2] The law of attempt during this time period was still evolving, and felony-murder was a means to ensure that the attempt was appropriately punished where it resulted in death. Id. at 92.
The first Supreme Judicial Court case that specifically addressed the issue of liability for a death occurring during the commission of a felony (felony-murder liability)[3] was issued in 1863, five years after the enactment of the statute. See Commonwealth v. Campbell, 7 Allen 541 (1863). In Campbell, a man was killed by a gun shot during a draft riot but it was not clear whether the shot was fired by a rioter or by a soldier who was defending the armory from the rioters. Id. at 541, 543. The court considered the prosecutor’s request for a jury instruction declaring that, if the defendant was a participant in the riot, and if the homicide occurred during the attack on the armory, the defendant “is in law *829 guilty of manslaughter” even if the evidence fails to show whether the shot was fired by a rioter or a soldier. Id. at 543. The court held that the jury should be instructed that the defendant is entitled to an acquittal unless the jury finds ‘“beyond a reasonable doubt that the deceased was killed by means of a gun or other deadly weapon in the hands of the prisoner, or of one of the rioters with whom he was associated and acting.” Id. at 547-548. The court reasoned that its conclusion flowed from the general rule of law ‘“that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it, and that, if he combines and confederates with others to accomplish an illegal purpose, he is liable [criminally] for the acts of each and all who participate with him in the execution of the unlawful design.” Id. at 543-544. But he is not criminally liable for acts that are not ‘“committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose.” Id. at 544.
The Campbell opinion identifies two principles of law on which our common law of felony-murder liability rests that we reject elsewhere in our criminal jurisprudence: vicarious substantive criminal liability for every act committed by a joint venturer, and the conclusive presumption of malice from the intent to commit an inherently dangerous felony. See Tejeda, 473 Mass. at 276 (‘“the common law of felony-murder is an exception to two basic principles of our criminal jurisprudence”). I discuss each in turn.
The first of these principles is the rule of law that a person engaged in a criminal joint venture is criminally liable for all the acts of his or her accomplices committed in furtherance of the joint venture. This rule was adopted by the United States Supreme Court in Pinkerton v. United States, 328 U.S. 640, 645-648 (1946), which held that a defendant may be found guilty of substantive offenses committed by his coconspirator in furtherance of the conspiracy, even if he did not participate directly in the commission of those substantive offenses.
We no longer adhere to this Pinkerton theory of accomplice liability. See Commonwealth v. Stasiun, 349 Mass. 38, 47-49 (1965) (‘“To be liable for the substantive offence, a coconspirator must participate or aid in the commission of it”). We declared in Stasiun, supra at 48:
‘“While it has been said that a conspiracy is a ‘partnership in crime’ (United States v. Socony-Vacuum Oil Co., Inc., 310 *830 U.S. 150, 253 [(1940)]), that metaphor should not be pressed too far. It does not follow that such a partnership is governed by the same principles of vicarious liability as would apply in civil cases. Our criminal law is founded on the principle that guilt, for the more serious offences, is personal, not vicarious. One is punished for his own blameworthy conduct, not that of others. Perkins on Criminal Law, 550 [(1957)]. Sayre, Criminal Responsibility for the Acts of Another, 43 Harv. L. Rev. 689 [(1930)] .... To ignore the distinction between the crime of conspiracy and the substantive offence would enable ‘the government through the use of the conspiracy dragnet to convict a conspirator of every substantive offense committed by any other member of the group even though he had no part in it or even knowledge of it.’ United States v. Sall, 116 F.2d 745, 748 (3d Cir. [1940]).”
Under our common law of joint venture liability, a defendant is criminally responsible for a crime committed by an accomplice only where the defendant knowingly participates in the crime with the intent required to commit it. See Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009). But until now, we have retained one exception: under our common law of felony-murder, a defendant was still vicariously responsible for all the acts of his or her accomplices that resulted in death committed during the course of the felony. Tejeda, 473 Mass. at 275-276. The consequence of this exception was that, if an accomplice shot and killed a victim during the commission of an armed robbery, the defendant was guilty of felony-murder even if he or she sat outside in the getaway vehicle and had implored the accomplices to hurt no one in committing the crime. However, if the accomplice committed the same shooting but the victim survived, the defendant sitting in that getaway vehicle would have been guilty only of the underlying armed robbery, not of the shooting. “Only where a dangerous felony result[ed] in death [did] we adopt a principle that we otherwise [had] ‘firmly rejected’ — that a person who knowingly participates in one crime as part of a joint venture is ‘ipso facto also guilty’ of all other crimes committed by an accomplice in furtherance of the joint venture.” Id. at 276, quoting Commonwealth v. Richards, 363 Mass. 299, 306 (1973). See Commonwealth v. Hanright, 466 Mass. 303, 307-310 (2013), quoting 2 W.R. LaFave, Substantive Criminal Law § 13.3 (b), at 362-363 (2d ed. 2003) (“we remain committed to the view *831 that . . .A’s guilt as an accomplice to one crime should not per se be a basis for holding A accountable for a related crime merely because the latter offense was carried out by A’s principal”).
The second principle set forth in Campbell, 1 Allen at 543 — ‘“that a person engaged in the commission of an unlawful act is legally responsible for all the consequences which may naturally or necessarily flow from it” — has evolved in our common law of felony-murder into a rule that, where a defendant commits an inherently dangerous felony, such as armed robbery, he or she is criminally responsible for the consequences of every act by a joint venturer during the commission of the felony where the consequence is death. See Hanright, 466 Mass. at 307-310, citing Matchett, 386 Mass. at 502. As a result of this rule, a defendant who participates in an armed robbery is guilty of felony-murder in the first degree if the defendant or an accomplice commits any act that results in death, even if the act is accidental and unintended. As a result, although in every other circumstance a killing constitutes murder only where it is committed with actual malice, where the killing occurs in the commission of an inherently dangerous felony, proof of actual malice is not required; a felony-murder conviction may rest on proof of constructive malice, which is defined simply as the intent to commit the underlying felony.
We have noted that, in this regard, our common law of felony-murder is an exception to our general rule that ‘“we require proof of a defendant’s intent to commit the crime charged, and do not conclusively presume such intent from the intent to commit another crime.” Tejeda, 473 Mass. at 276. In fact, we have said, “A felony-murder rule that punishes all homicides committed in the perpetration of a felony whether the death is intentional, unintentional or accidental, without the necessity of proving the relation of the perpetrator’s state of mind to the homicide, violates the most fundamental principle of the criminal law — ‘criminal liability for causing a particular result is not justified in the absence of some culpable mental state in respect to that result.’ ” Matchett, 386 Mass. at 506-507, quoting Aaron, 409 Mich. at 708.
The consequence of this exception to ‘“the most fundamental principle of the criminal law” is that, if a defendant drops his or her firearm and accidentally shoots someone during the commission of a felony, the defendant is guilty of both the underlying felony and felony-murder if the shooting proves fatal. But if the *832 victim survives, the defendant is guilty only of the underlying felony, and is not criminally responsible for the shooting. The defendant’s liability for the shooting rests not on the defendant’s conduct, but on whether the victim lives or dies. See, e.g., Hanright, 466 Mass. at 308-309 (“The intent to commit armed robbery, although sufficient to support liability for felony-murder on a theory of joint venture, is insufficient to support liability for” additional offenses against other, surviving police officers who attempted to apprehend accomplice); Richards, 363 Mass. at 302, 307-308 (defendant who was waiting near getaway vehicle in armed robbery may be found guilty of assault with intent to murder police officer committed by accomplice only if defendant had specific intent to kill police officer).
We have recognized that the application of the felony-murder rule erodes “the relation between criminal liability and moral culpability.” Matchett, 386 Mass. at 507, quoting People v. Washington, 62 Cal. 2d 777, 783 (1965). It is time for us to eliminate the last vestige of these two abandoned principles and end their application in our common law of felony-murder. Doing so means that criminal liability for murder in the first or second degree will be predicated on proof that the defendant acted with malice or shared the intent of a joint venturer who acted with malice. The sole remaining function of felony-murder will be to elevate what would otherwise be murder in the second degree to murder in the first degree where the killing occurs during the commission of a fife felony.[4]
Thus, a defendant who commits an armed robbery as a joint venturer will be found guilty of murder where a killing was committed in the course of that robbery if he or she knowingly participated in the killing with the intent required to commit it — that is, with the intent either to kill, to cause grievous bodily harm, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result. Model Jury Instructions on Homicide 57 & n.131 (2013), citing Commonwealth v. Earle, 458 Mass. 341, 346-347 & n.9, 350 (2010), and Commonwealth v. Grey, 399 Mass. 469, 470 n.1, 472 n.4 (1987). Where a defendant participates in an armed robbery but does not have the requisite intent for murder, the defendant will be found guilty *833 of involuntary manslaughter if he or she acted wantonly or recklessly. Where a defendant does not participate in the killing or otherwise lacked the intent required to prove murder or manslaughter, the defendant will not go free because he or she can still be convicted of the underlying armed robbery he or she committed, and a judge in setting the sentence on that underlying felony can take into account the aggravating factor that the felony resulted in a victim’s death. Where the defendant is found guilty of murder and the murder is committed “in the commission or attempted commission of a crime punishable with . . . imprisonment for life,” the defendant will be guilty of murder in the first degree, regardless of whether the murder was premeditated or committed with extreme atrocity or cruelty. G. L. c. 265, § 1.
We are not the first to do this. Great Britain has abolished felony-murder liability by statute, providing that “[wjhere a person kills another in the course or furtherance of some other offence, the killing shall not amount to murder unless done with the same malice aforethought ... as is required for a killing to amount to murder when not done in the course or furtherance of another offence.” Homicide Act of 1957, 5 & 6 Eliz. 2, c. 11, § 1. See Tejeda, 473 Mass. at 277 n.9. Michigan has abolished felony-murder liability under its common law, id., citing Aaron, 409 Mich. at 727-729, and Hawaii and Kentucky have abolished felony-murder liability by statute, Tejeda, supra, citing 7A Hawaii Rev. Stat. § 707-701 commentary, and Ky. Rev. Stat. Ann. § 507.020, 1974 commentary. Other States have not abolished the doctrine but have significantly departed from the traditional formulation. See Tejeda, supra, citing State v. Doucette, 143 Vt. 573, 582 (1983) (holding that felony-murder requires proof of malice, but that malice can be inferred “from evidence presented that the defendant intentionally set in motion a chain of events likely to cause death or great bodily injury, or acted with extreme indifference to the value of human life”), Del. Code Ann. tit. 11, §§ 635, 636 (2007) (requiring defendant to act with recklessness, for murder in the first degree, or criminal negligence, for murder in the second degree), and N.Y. Penal Law §§ 125.25(3), 125.27 (McKinney 2009) (setting forth affirmative defense where joint venturer rather than defendant commits act causing death). The Model Penal Code also has abandoned the traditional doctrine of felony-murder, requiring the homicide to be purposeful, knowing, or reckless in order to constitute murder, but providing for a rebuttable presumption of recklessness where the homicide oc *834 curred during the commission of certain felonies. Model Penal Code §§ 1.12(5), 210.2(l)(b) (Official Draft and Revised Comments 1985). See Matchett, 386 Mass. at 503 n.12.
Without felony-murder liability, our common law of murder will be spared much of the confusion that has arisen from applying legal principles we have otherwise abandoned. General Laws c. 265, § 1, provides that ‘“[t]he degree of murder shall be found by the jury,” but we have held that this statutory directive cannot be met when a defendant is charged with felony-murder and the only underlying felony is a fife felony, because in such a case ‘“no reasonable view of the evidence supports a conviction of murder in the second degree.” See Paulding, 438 Mass. at 3. As a result, when a defendant fatally shoots a victim but does not do so during the commission of a felony, the jury must be given the option of finding the defendant guilty of murder in the second degree. But when a defendant, as in this case, provides a weapon and hooded sweatshirts to friends to help them commit what turns out to be a botched armed robbery, the jury is denied that option.
The abolition of felony-murder liability from our common law of murder is prospective, applying only to cases where trial begins after our adoption of the change. It will have no effect on felony-murder cases already tried, including this case (which is why this is a concurrence rather than a dissent). I recognize that a felony-murder case might have been tried very differently if the prosecutor had known that liability for murder would need to rest on proof of actual malice. For instance, a prosecutor might have asked for an involuntary manslaughter instruction if he or she had known that the jury could not rest a finding of murder on felony-murder liability.
Justice Gaziano’s concurrence identifies various factual scenarios, some of which come from Massachusetts criminal cases, where a victim was killed during the commission of a felony. See post at 836, 838-840. Through these examples, that concurrence seeks to show, first, that a verdict of murder in the first degree would not be possible on these facts without felony-murder liability and, second, that any lesser conviction would not be consonant with justice. See id. In fact, the examples show that, without felony-murder liability, each of these cases could yield convictions that are entirely consonant with justice.
Without felony-murder liability, the rapist who smothers the child rape victim could be found guilty of murder with actual malice if a jury found, either from the violence of the rape or the *835 smothering of the child, that the defendant had an intent to commit grievous bodily harm or intended to do an act that, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result. See post at 836. Had the jury been so instructed, Robert Wade, too, could have been found guilty of murder without felony-murder liability based on his rape of an eighty-three year old woman, his dragging her along a dirt road, and his violent assault on her body, which would more than suffice to support a finding of those two prongs of malice. See id. at 838; Commonwealth v. Wade, 428 Mass. 147, 148-149, 153 (1998) (jury instructed only on felony-murder in first and second degree and manslaughter). Had the jury found actual malice, each would have been convicted of murder in the first degree under G. L. c. 265, § 1, because the murder was committed in the commission of a fife felony.
The armed robbers who accidently discharged a fatal shot while vaulting over the counter or when struck by the victim’s baseball bat likely could not be found guilty of murder in the first degree because their intent with respect to the killing probably did not satisfy any of the three prongs of malice. See post at 836, 839-840; Commonwealth v. Vizcarrondo, 427 Mass. 392, 397 (1998). But they might be found guilty of involuntary manslaughter if the jury found that the death arose from their wanton or reckless conduct that created a high degree of likelihood that substantial harm will result to another person. See Model Jury Instructions on Homicide 73 & n.158 (2013), citing Commonwealth v. Earle, 458 Mass. 341, 347 (2010); Commonwealth v. Sneed, 413 Mass. 387, 393-394 (1992). And, even if the jury found that the death did not arise from their wanton or reckless conduct, they could still be sentenced to fife in prison on the armed robbery conviction. See G. L. c. 265, § 17. Convictions of both armed robbery and involuntary manslaughter, or of armed robbery alone, with a possible sentence of fife in prison, should not be perceived as “getting off easy” for an accidental killing during an armed robbery.[5]
*836 Felony-murder liability is a creation of our common law, and this court is responsible for the content of that common law. When our experience with the common law of felony-murder liability demonstrates that it can yield a verdict of murder in the first degree that is not consonant with justice, and where we recognize that it was derived from legal principles we no longer accept and contravenes two fundamental principles of our criminal jurisprudence, we must revise that common law so that it accords with those fundamental principles and yields verdicts that are just and fair in light of the defendant’s criminal conduct. “And if not now, when?” C. Taylor, Sayings of the Jewish Fathers 23 (2d ed. 1897) (quoting Hillel the Elder).

 should not escape notice that this is the first time we have exercised our authority under G. L. c. 278, § 33E, to reduce a conviction of murder in the first degree on the theory of felony-murder to murder in the second degree where the evidence more than sufficed to support the verdict. See Commonwealth v. Rolon, 438 Mass. 808, 824 n.19 (2003) (“This court has reduced convictions of murder in the first degree predicated on felony-murder only where the evidence suggested that the felony intended by the defendant would not suffice for felony-murder in the first degree”). Until now, “[t]his court’s power under G. L. c. 278, § 33E, has never been exercised to relieve a defendant of the consequences of participation in a felony that does qualify as the predicate for felony-murder in the first degree.” Id. In Rolon. we declared:
“We recognize that the doctrines of felony-murder and joint venture may, on some hypothetical fact patterns, produce a conviction of murder in the first degree that would appear out of proportion to a defendant’s culpability. It may in some circumstances seem harsh to convict a defendant of murder in the first degree if the defendant was on the remote outer fringes of a joint venture to commit some felony that satisfied the felony-murder rule in only some hypertechnical way.”
Id. at 824. But in Rolon we simply assumed, “without deciding, that reduction of a verdict in such circumstances could be appropriate under [Mass. R. Grim. R 25 (b) (2), as amended, 420 Mass. 1502 (1995)].” Id. We did not need to decide that issue because we determined that the case did “not present such circumstances.” Id. Here, it is not accurate to say that the defendant’s conduct constituted felony-murder “in only some hypertechnical way.” However, the court correctly recognizes that a conviction of murder in the first degree, with its mandatory sentence of life in prison without the possibility of parole, is not consonant with justice where the defendant’s role was limited to providing a firearm and hooded sweatshirts to his accomplices for the commission of an armed robbery.

The statute was revised in 1860 to include “[m]urder committed ... in the commission of, or attempt to commit, any crime.” St. 1860, c. 160, § 1.

In this opinion “felony-murder liability” refers to liability for murder absent independent proof of malice. This is distinguishable from felony-murder as a statutory aggravator that merely elevates what would otherwise be murder in the second degree, based on proof of actual malice, to murder in the first degree where the killing occurred during the commission of a life felony — the concept codified in G. L. c. 265, § 1.

This will entirely eliminate the concept of “felony-murder in the second degree.” See Model Jury Instructions on Homicide 58-63 (2013).

Justice Gaziano’s concurrence correctly notes that this concurring opinion is in conflict with the reasoning in the court’s unanimous opinion in Commonwealth v. Hanright, 466 Mass. 303 (2013), where we reversed the judge’s dismissal of indictments charging crimes related to an accomplice’s attempted escape following an armed robbery and shooting and so much of an indictment charging murder in the first degree as included theories other than felony- *836 murder. Where that opinion discussed the distinction between joint venture liability for the escape-related crimes and the joint venture principles in the common law of felony-murder, I agree that the reasoning differs, but that reasoning was premised on principles that this concurring opinion changes. The reference to that case is apt, however, because its facts illustrate the need for this change in our jurisprudence if our law of homicide is to be more consonant with justice. Under our current law of felony-murder, Scott Hanright, who was nineteen years old at the time, could have been convicted of murder in the first degree, with a mandatory life sentence without the possibility of parole, if he were found to have served as an unarmed lookout or getaway driver during a department store robbery committed by his accomplice, who was his grandmother’s boyfriend. Id. at 305-306. The accomplice killed a police officer who responded to the robbery; Hanright never entered the department store and, when he saw police officers pursuing his accomplice before the shooting, walked away from the scene of the crime. Id. at 306. The prosecutor ultimately did not seek a conviction of murder in the first degree; Hanright pleaded guilty to murder in the second degree. Man, 23, Guilty in Slaying of Officer, Boston Globe, May 28, 2015, at B1. A conviction of murder in the second degree would not have been legally possible except through our review under G. L. c. 278, § 33E, if Hanright had been found guilty of felony-murder in the first degree with armed robbery as the predicate felony.