## COMMONWEALTH vs. JOSE BENITEZ.[1]

Middlesex. November 9, 2012. - March 18, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Homicide. Felony-Murder Rule. Robbery. Accessory and Principal. Joint Enterprise. Evidence, Joint venturer, Prior misconduct, Statement of codefendant, Testimony before grand jury, Third-party culprit. Practice, Criminal, Capital case, Instructions to jury, Duplicative convictions. Grand Jury.*

At the trial of indictments charging the defendant with, inter alia, felony-murder in the first degree on a theory of joint venture with armed robbery as the predicate offense, the evidence was sufficient to permit the jury to conclude beyond a reasonable doubt that the defendant possessed or shared an intent to rob the victim, given testimony that it was the defendant who first proposed that he and his coventurer rob the victim, gave the coventurer a gun, and acted as lookout. [689-691]

There was no merit to a criminal defendant's contention that the erroneous admission, at a joint trial with a codefendant, of improper character evidence against the codefendant biased the defendant in the eyes of the jury. [691-693]

At the trial of indictments charging the defendant with felony-murder in the first degree and armed robbery, the judge did not err in declining to instruct the jury on felony-murder in the second degree, where the defendant did not request such an instruction, and where no reasonable view of the evidence would support a finding that the defendant participated only in an armed assault with intent to rob rather than an armed robbery of the victim. [693-695]

The criminal defendant was not entitled to a new trial based on errors that this court decided entitled the codefendant to a new trial, where the erroneous admission of the codefendant's statement to the police did not implicate the defendant (and thus did not prejudice him), and where the defendant was not in a position to claim error arising from the testimony of a witness regarding statements that the defendant made implicating the codefendant [695]; further, the erroneous admission for substantive purposes of grand jury testimony by the defendant's sister did not create a substantial likelihood of a miscarriage of justice, where the testimony was consistent with the defendant's theory of the case [695-696]; finally, there was no merit to a claim of error regarding third-party culprit evidence [696].

[1] As is our custom, we refer to the defendant by the name appearing in the indictments. The defendant is also known as Jose Luis Claudio, which is the name that was used at trial.

This court vacated the criminal defendant's conviction of armed robbery, where that offense was the predicate for the defendant's conviction of felony-murder in the first degree. [697]

This court declined to exercise its powers under G. L. c. 278, § 33E, to reverse the defendant's conviction of felony-murder in the first degree, where, although this court reversed a codefendant's convictions in a case tried on a theory of joint venture with the codefendant as the principal, the Commonwealth was not required to secure a conviction of the principal actor in order to proceed on a theory of joint venture against another person; and where there was no merit to the claim that the admission of negative character evidence against the codefendant at trial prejudiced the defendant, in that the evidence of the defendant's involvement in the planning and execution of the robbery underlying the murder was substantial. [697]

INDICTMENTS found and returned in the Superior Court Department on September 15, 2005.

The cases were tried before *Frances A. McIntyre*, J.

*Jeffrey L. Baler* for the defendant.

*Robert J. Bender*, Assistant District Attorney (*Elizabeth Dunigan*, Assistant District Attorney, with him) for the Commonwealth.

BOTSFORD, J. In 2008, the defendant, with his codefendant, William Santos,[2] was tried by a jury in the Superior Court on charges of felony-murder in the first degree and armed robbery. The jury found the defendant and Santos guilty of both crimes. The defendant appeals from his convictions. His principal claims are that the evidence of his participation in a joint venture with Santos to rob the victim was insufficient to support his convictions; the trial judge erroneously admitted evidence of a prior bad act of Santos at their joint trial, causing prejudice to the defendant; and the judge should have instructed the jury on the elements of felony-murder in the second degree. For the reasons discussed below, we affirm the defendant's conviction of felony-murder in the first degree, and decline to exercise our power pursuant to G. L. c. 278, § 33E, to order a new trial or enter a verdict of a lesser degree of guilt. Because it is duplicative of

[2]William Santos brought a separate appeal. In *Commonwealth* v. *Santos*, 463 Mass. 273 (2012) (*Santos*), this court reversed his convictions and remanded the case for a new trial.

the murder conviction, we vacate the conviction of armed robbery and remand to the Superior Court for dismissal of that indictment.

*Background.* The facts, as the jury could have found them, are generously described in *Commonwealth* v. *Santos*, 463 Mass. 273, 274-281 (2012) (*Santos*). We summarize them, and refer to additional facts in our discussion of the defendant's claims.

At around 5:30 P.M. on July 26, 2005, the victim, Luis Daniel Rodriguez, was shot outside the Red Cross building on Pawtucket Street in Lowell, adjacent to the apartment building where he resided. The victim died as a result of a single gunshot wound to the chest. The defendant knew the victim, had purchased heroin from him in the past, and had telephoned the victim's cellular telephone on the afternoon of July 26 to arrange for the purchase of heroin for Santos, the defendant's friend. Travelling in an automobile driven by Jesus Antonio Marquez, the defendant and Santos initially arranged to meet with the victim at the parking lot outside a supermarket, but when the victim failed to arrive, the defendant then agreed to meet at the Red Cross building. En route, the defendant suggested that they rob the victim; Santos immediately accepted the idea, adding that the victim owed him money. Santos asked the defendant for a weapon, and the defendant handed him a pistol from his waistband. Marquez parked the car on School Street, a short distance from the agreed-on meeting place. The defendant and Santos left the car and headed toward the Red Cross building. After a brief confrontation with the victim, Santos shot him; the defendant was standing nearby. Shortly thereafter, Marquez observed Santos and then the defendant running up School Street toward his car. Marquez picked them up and quickly drove away from the area. Each of them was arrested within days of the shooting.

On September 15, 2005, the defendant and Santos were indicted for murder in the first degree and armed robbery. After a lengthy jury trial in the spring of 2008, in which Marquez, who had entered into an agreement with the Commonwealth,[3]

[3]Pursuant to his agreement, Jesus Antonio Marquez was charged with the crime of accessory before the fact to armed robbery. He was being held in custody at the time of the trial, but the charge was still pending.

testified as the principal prosecution witness, the jury found the defendant and Santos guilty of both charges.

*Discussion.* 1. *Sufficiency of the evidence of joint venture.* The jury convicted the defendant of felony-murder in the first degree, with armed robbery as the predicate offense. The Commonwealth's theory was that Santos and the defendant, acting together in a joint venture, undertook to, and did, rob the victim, and that Santos shot and killed the victim in the course of the robbery. On appeal, the defendant argues that the evidence of his participation in the claimed joint venture to rob was insufficient, principally because the evidence that the defendant possessed or shared an intent to steal from the victim — the intent necessary for the crime of armed robbery, see, e.g., *Commonwealth* v. *Anderson*, 461 Mass. 616, 633, cert. denied, 133 S. Ct. 433 (2012) — was essentially nonexistent, that if the defendant joined in any joint venture with Santos, it was only a venture to purchase drugs from the victim, not to rob him.

Because sufficiency of the evidence is at issue, the question we must decide is "whether the evidence viewed in the light most favorable to the Commonwealth could have 'satisfied a rational trier of fact' of each element of the crimes charged beyond a reasonable doubt." *Commonwealth* v. *Deane*, 458 Mass. 43, 50 (2010), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). To prove the defendant's participation as a joint venturer in an armed robbery, the Commonwealth was required to prove beyond a reasonable doubt that the defendant knowingly participated with Santos in the commission of the armed robbery and shared the necessary intent for the crime.[4] See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009).[5] As for the substantive crime of armed robbery itself, it was incumbent on the Commonwealth to prove that the defendant or

---

[4]It also was necessary for the Commonwealth to prove that the defendant was armed with a dangerous weapon or had knowledge that Santos was so armed. See, e.g., *Commonwealth* v. *Fickett*, 403 Mass. 194, 196-197 (1988). The Commonwealth met its burden to prove that the defendant knew Santos was armed because the defendant actually supplied the gun to Santos prior to the shooting. The defendant does not contest this point.

[5]We apply the principles clarified in *Commonwealth* v. *Zanetti*, 454 Mass. 449, 467-468 (2009), to claims concerning the sufficiency of the evidence of joint venture, even though the trial preceded that decision. See *id.* at 468. See also *Commonwealth* v. *Jansen*, 459 Mass. 21, 28 n.20 (2011), and cases cited.

Santos, or both, (1) was or were armed with a dangerous weapon; (2) either applied actual force or violence to the body of the person identified in the indictment, or by words or gestures put him in fear; (3) took the money or the property of another; and (4) did so with the intent (or sharing the intent) to steal it. See *Commonwealth* v. *Rogers*, 459 Mass. 249, 252 n.4, cert. denied, 132 S. Ct. 813 (2011). There was sufficient evidence from which the jury could find each of these elements established beyond a reasonable doubt, including the element of intent.

We disagree with the defendant that the evidence only showed that the defendant shared, at most, Santos's intent to purchase drugs from the victim, not his intent to rob the victim. According to Marquez, whose testimony the jury were entitled to credit, it was the defendant who (1) first proposed that they rob the victim; (2) gave Santos a gun — an act that the jury were entitled to interpret as intended to assist Santos in carrying out the robbery plan; and (3) got out of the car with Santos when they arrived near the destination that the defendant had arranged with the victim, and stood around the corner from him, acting as a lookout.[6] This was more than sufficient evidence to support a finding that the defendant not only participated knowingly and actively with Santos in the armed robbery, but also shared the intent necessary for the crime — in the sense that he knew Santos was intending to rob the victim while armed with a gun and was willing for that plan to succeed.[7] See *Commonwealth* v.

---

[6]While the defendant points out that he was not in sight of the alleged robbery, a person need not be physically present at the scene of the crime in order to participate in it as a joint venturer. See, e.g., *Commonwealth* v. *Ortiz*, 424 Mass. 853, 858-859 (1997). Contrary to the defendant's argument, the facts of this case are unlike those presented in *Commonwealth* v. *Reveron*, 75 Mass. App. Ct. 354, 358 (2009), where the Appeals Court concluded that evidence before the grand jury that the defendant may have had knowledge that some participants in a drug deal were armed did not support an indictment charging armed robbery based on a nonpresence joint venture theory but only supported a reasonable inference that the defendant knew a drug deal was in action. The defendant here had direct knowledge that Santos was armed as he approached the victim and had a hand in shaping the plan for the armed robbery, including supplying the weapon.

[7]The defendant emphasizes that he instructed Santos not to shoot the victim *if* Santos were going to rob him, and that the defendant did not receive any proceeds from the robbery itself. He argues these facts demonstrate that the

*Stewart*, 411 Mass. 345, 349-350 (1991). See also *Commonwealth v. Whitehead*, 379 Mass. 640, 650-652 (1980).

2. *Prior bad act of Santos.* The defendant contends that the judge erred in admitting evidence that earlier on the day of the victim's death, the defendant and Santos had gone to the home of Carmelo Hiraldo — the former boy friend of the defendant's girl friend and father of three of her children — so that the defendant could talk to him, and Santos unexpectedly had punched Hiraldo in the face when the conversation became heated. The judge permitted the evidence of the punching incident to be introduced because she concluded that while it could not be admitted to show bad character or propensity to violence, it was relevant on the issue of a joint venture between the defendant and Santos; she gave the jury a limiting instruction to this effect both during the trial and as part of her final charge.

The defendant asserts that the judge's conclusion about relevance was incorrect: the punching incident was not relevant to the Commonwealth's claim of a joint venture between Santos and the defendant to rob the victim, and was particularly prejudicial on that score because it involved Santos, the defendant's alleged joint venturer, committing an act of unprovoked, unjustified violence. However, the defendant — in contrast to Santos — did not object to the admission of this evidence at trial, and therefore we review it to determine if it created a substantial likelihood of a miscarriage of justice. See *Commonwealth v. Maynard*, 436 Mass. 558, 570 (2002).

robbery was a solo venture of Santos, and not one in which he intended to, or did, join. The argument fails. Regardless whether the defendant spoke in conditional terms about the robbery, there was evidence from which the jury could find that he actively participated in it by arranging for Santos to meet the victim, suggesting robbery, providing Santos with a gun, and standing by while Santos went to confront the victim. And the fact that the defendant counselled against a plan to shoot the victim is irrelevant to the determination whether he participated in a joint venture to rob the victim, because the shooting of the victim has no bearing on whether the necessary elements of armed robbery were met. See *Commonwealth v. Christian*, 430 Mass. 552, 556 & n.3 (2000). It is equally irrelevant that the defendant did not share in the proceeds of the robbery: receiving or sharing in the fruits of the robbery is not a necessary element of that crime. What matters is whether there was evidence that he knowingly participated in the commission of the crime itself with the requisite intent. See *Commonwealth v. Zanetti*, 454 Mass. at 467-468. There was more than sufficient evidence on these points.

We agree with the defendant that evidence of the punching incident should not have been admitted. See *Santos,* 463 Mass. at 296.[8] The fact that Santos had previously punched Hiraldo in the context of an argument between Hiraldo and the defendant on a subject having nothing to do with the victim offers no probative evidence concerning whether the defendant and Santos later combined in a joint venture to rob the victim. At most, the evidence offered general support for the proposition that the defendant and Santos were good friends, but there was substantial evidence already before the jury about the friendship that did not involve a prior act of violence by Santos.[9]

We do not agree, however, that the error requires reversal of the defendant's convictions. Marquez's testimony about the earlier punch by Santos was one detail in a long description of the drive he made with the defendant and Santos to Hiraldo's residence and then to meet with the victim. The fact of this drive and in particular Marquez's testimony about the conversation between the defendant and Santos during the drive from Hiraldo's residence was highly relevant to the issue of joint venture: according to Marquez, it was while he was driving the defendant and Santos away from Hiraldo's residence that the defendant made the arrangement to enable Santos to buy heroin from the victim and formed with Santos the plan to rob the victim. Moreover, as Marquez described it, he drove the defendant and Santos to see Hiraldo on the afternoon of July 26 because the defendant wanted to make sure that there were no "problems" remaining between him and Hiraldo after Santos's punch — in other words, the defendant was acting as a "peacemaker," a point made by his counsel during his closing argument to the jury. In these circumstances, we reject the defendant's contention that the Commonwealth's introduction of what essentially was improper character evidence relating to Santos in turn biased the defendant in the eyes of the jury. In sum, the error did not

[8]Although we determined in *Santos* that admission of this evidence was error, we did not reverse Santos's convictions on this ground. See *Santos,* 463 Mass. at 296.

[9]The evidence showed, for example, that Santos and his wife lived with the defendant and his girl friend at the time of the events leading to the victim's death, and more particularly that the defendant undertook to contact the victim on July 26 on behalf of Santos, so that Santos could buy heroin.

give rise to a substantial likelihood of a miscarriage of justice and does not entitle the defendant to relief.

3. *Absence of instruction on felony-murder in the second degree.* With respect to the defendant, the judge instructed the jury solely on felony-murder in the first degree and armed robbery, a life sentence felony. On appeal, the defendant argues that the judge also should have instructed on felony-murder in the second degree based on the predicate felony of armed assault with intent to rob, which has a maximum sentence of twenty years in prison. See G. L. c. 265, § 18 (*b*).[10] The Commonwealth responds that the defendant did not request an instruction on felony-murder in the second degree at trial and, in any event, no reasonable view of the evidence would support a finding that the defendant participated only in an armed assault with intent to rob rather than an armed robbery of the victim.

We agree with the Commonwealth on both points. First, as to the defendant's position at trial, during the final charge conference, when the prosecutor raised a question concerning the possibility of an instruction on felony-murder in the second degree based on the offense of armed assault with intent to rob or larceny from a person,[11] the judge indicated that she did not find support in the evidence for instructing on these lesser felonies as alternatives to the charged offense of armed robbery, and intended to instruct only on felony-murder in the first degree based on the charged offense. The judge invited both defense counsel to disagree, but neither did so. See *Commonwealth* v. *Stokes*, 460 Mass. 311, 315-316 (2011) (no error if trial judge does not instruct on uncharged felony as predicate for instruction on felony-murder in the second degree even if evidence rationally would support such instruction, at least where no such instruction was requested or even brought to judge's attention at trial).

Second, any rational view of the evidence pointed to the

---

[10]There was no separate indictment charging the defendant with the crime of armed assault with intent to rob.

[11]The prosecutor stated in relevant part that "if this jury were to find that it wasn't an armed robbery; for example, it was an assault with intent to rob or a larceny from a person, then it wouldn't be a felony with the maximum penalty of life. So then they could find second-degree . . . felony-murder."

charged crime of armed robbery, and not the lesser crime of armed assault with intent to rob.[12] Marquez testified that minutes before the defendant and Santos left Marquez's car, they had agreed to rob the victim using a gun supplied by the defendant. There was no contrary evidence introduced. Marquez also was the sole source of evidence of what transpired after Santos approached the victim, and his testimony was that Santos confronted the victim and told him, "This is a stickup"; when the victim did not hand over any property immediately, Santos became angry and told the victim, "I ain't fuckin' playing with you. I'll shoot you. This is a stickup. Give me what you got"; in response, the victim tried to hit Santos, and then "took off running, and that's when [Santos] shot [the victim]." Finally, shortly after the victim was shot — again according to Marquez but supported also by the testimony of Olga Gonzalez, the defendant's sister — while Santos stood outside Gonzalez's home after leaving the area where the shooting occurred, he pulled from his pocket a gold crucifix necklace belonging to the victim in order to showcase it to Marquez and Gonzalez.

No reasonable juror would view this evidence as supporting a charge of armed assault with intent to rob rather than armed robbery. If the jury disbelieved Marquez, they would have found the defendant not guilty; they could not have rationally concluded

[12]As discussed, the elements of armed robbery are that the defendant takes money or other property from the victim with the intent to steal it, while armed with a dangerous weapon and by applying actual force to the victim or putting the victim in fear through the use of threatening words or gestures. See *Commonwealth* v. *Rogers*, 459 Mass. 249, 252 & n.4, cert. denied, 132 S. Ct. 813 (2011). "The elements of armed assault with intent to rob are that the defendant, armed with a dangerous weapon, assaults a person with a specific or actual intent to rob the person assaulted." *Commonwealth* v. *Rivera*, 445 Mass. 119, 130 n.15 (2005). This court has held that, depending on the facts, armed assault with intent to rob is equivalent to "an 'attempted commission' of armed robbery," *Commonwealth* v. *Ladetto*, 349 Mass. 237, 248-249 (1965), and an attempted commission of armed robbery is a life sentence felony for purposes of felony-murder. See *id.* More generally, in a theoretical sense, armed assault with intent to rob is a lesser included offense of every armed robbery. See *Commonwealth* v. *Rivera, supra.* However, the theoretical existence of a lesser included predicate offense with a maximum sentence of less than life imprisonment by itself does not require that an instruction on felony-murder in the second degree be given. What matters is whether the actual evidence in the case reasonably would support a jury finding that the lesser predicate felony had been proved, and not the greater.

that he was guilty only of armed assault with intent to rob.[13] The judge acted well within her discretion in refusing to charge the jury on armed assault with intent to rob and felony-murder in the second degree. See *Commonwealth* v. *Glowacki*, 398 Mass. 507, 514 (1986) ("No construction of the facts in this case would warrant an instruction to the jury on felony-murder with larceny from the person as the underlying felony. The judge properly instructed the jury as to felony-murder as it related to unarmed robbery").

4. *Issues raised by Santos.* The defendant has joined in Santos's appellate brief pursuant to Mass. R. A. P. 16 (j), 365 Mass. 860 (1974), and argues that because this court concluded that Santos was entitled to a new trial on account of errors at trial, the defendant also should be granted a new trial. The argument fails. Santos was entitled to a new trial because of errors relating to (1) the admission of Santos's postarrest statement to the police, see *Santos*, 463 Mass. at 283-289; and (2) certain testimony of the defendant's sister, Gonzalez, see *id.* at 289-293. Santos's statement to the police did not implicate the defendant, and thus its erroneous admission did not prejudice the defendant. As for Gonzalez's testimony, the error with respect to Santos was that Gonzalez recounted statements allegedly made by the defendant that implicated Santos, in violation of *Bruton* v. *United States*, 391 U.S. 123, 135-136 (1968); because the statements at issue were allegedly made by the defendant himself, he is not in a position to claim a *Bruton* violation. See *id.* at 127-128.

With respect to the other claims in Santos's brief, they, too, offer no ground of relief to the defendant. Nonetheless we address them briefly here.[14]

a. *Substantive admission of grand jury testimony.* The judge

---

[13]The question whether the evidence would support a finding that the defendant was guilty of armed assault with intent to rob rather than armed robbery is wholly independent of whether the defendant was guilty as a joint venturer with Santos. That is, if the jury were to conclude that the Commonwealth failed to prove a joint venture between the defendant and Santos, the defendant could not be found guilty of *any* crime at issue here. Therefore, for purposes of considering the defendant's argument about assault with intent to rob and felony-murder in the second degree, we start from the premise that the jury permissibly found the joint venture between the defendant and Santos to have been proved.

[14]In the text that follows, we discuss two of the five issues that Santos raised in his appellate brief and that we considered at the end of our opinion

erred in admitting substantively the grand jury testimony by the defendant's sister Gonzalez that Santos had a gun tucked in his waistband when Santos, the defendant, and Marquez arrived at her house after the victim was shot. See *Santos*, 463 Mass. at 294-295. Admission of this statement by Gonzalez did not create a substantial likelihood of a miscarriage of justice for the defendant. As discussed, the defendant's defense was that the only joint venture in which he may have participated was one to obtain drugs from the victim and that, with respect to the robbery and related shooting of the victim, Santos was acting on his own. Gonzalez's grand jury statement placing the gun on Santos was consistent with the defendant's theory of the case.

b. *Third-party culprit evidence.* The judge denied Santos's motion in limine to allow his attorney to make a third-party culprit argument to the jury with respect to Thomas "T" Clermont. Given the sufficiency of the evidence suggesting that Clermont may have been involved in the shooting of the victim, we concluded that Santos's motion in limine should have been allowed. See *Santos*, 463 Mass. at 297-298. The defendant, however, did not seek to make a third-party culprit argument at trial. More importantly, the trial evidence concerning Clermont as a third-party culprit was relevant to Santos but not to the defendant.[15]

in *Santos*. See *Santos*, 463 Mass. at 293-298. We have considered earlier in this opinion a third, the issue concerning evidence that Santos punched Carmelo Hiraldo. We do not discuss further the remaining two issues raised by Santos — (1) his claim that it was error to allow the jury to consider the defendant's statement to the police against Santos, see *id.* at 293-294; and (2) the claim that evidence concerning Santos's prior incarceration for other crimes should not have been admitted, see *id.* at 295-296 — because they plainly have no connection to the defendant.

[15]Santos advanced an alibi defense at trial — he claimed to be elsewhere at the time the crime was committed — but it was Santos whom Marquez identified as the person who shot the victim. In this context, Marquez's testimony indicating that Thomas "T" Clermont (1) joined Santos and the defendant very soon after the shooting of the victim took place, and (2) immediately identified the gun used as his "biscuit" and took possession of it, offered the possibility that in fact Clermont had been the person who shot the victim rather than Santos. There was no evidence, however, that the defendant shot the victim. The Commonwealth's theory was that the defendant was an active participant in planning the robbery of the victim and as a lookout. Clermont's possible involvement as the shooter would not have affected the evidence of the defendant's alleged role.

5. *Merger.* The defendant contends that his conviction of armed robbery as a predicate offense for felony-murder in the first degree must be vacated because as a matter of law, the predicate offense merges with the felony-murder conviction. See *Commonwealth* v. *Rivera,* 445 Mass. 119, 131-132 (2005); *Commonwealth* v. *Mello,* 420 Mass. 375, 398 (1995). We agree.

6. *Review under G. L. c. 278, § 33E.* This court's decision in *Santos,* reversing his convictions, was released after the defendant and the Commonwealth filed their briefs in this appeal. At the oral argument before this court, the defendant raised, we infer under G. L. c. 278, § 33E, a new claim that because the jury specifically found Santos guilty as the principal in the joint venture and the defendant guilty solely as the accomplice, our reversal of Santos's convictions requires reversal of the defendant's convictions as well. He also argued that the erroneous admission of negative character evidence against Santos at the joint trial, see *Santos,* 463 Mass. at 296, prejudiced him because the jury could have found the defendant guilty on account of his close association with such a bad actor rather than based on sufficient evidence of the defendant's own participation.

These arguments fail. With respect to the joint venture claim, the Commonwealth is not required to secure a conviction of the principal actor in order to proceed on a theory of joint venture against another person. See *Commonwealth* v. *Williams,* 450 Mass. 645, 652 (2008), quoting *Commonwealth* v. *Gonzalez,* 443 Mass. 799, 806 (2005). As for the impermissible character evidence against Santos, as indicated, there was substantial evidence, provided primarily by Marquez, that the defendant himself was intricately involved in the planning and execution of the robbery and supplied the gun that Santos used to carry out the robbery and associated shooting of the victim. Although a finding of guilt by association is impermissible, see *Commonwealth* v. *Perry,* 357 Mass. 149, 151 (1970), this is not such a case. In conducting our review of the entire case under G. L. c. 278, § 33E, we find no basis to reverse the defendant's conviction of felony-murder in the first degree.

7. *Conclusion.* The judgment of conviction of armed robbery

is vacated and the underlying indictment is remanded for dismissal. The conviction of murder is affirmed.

*So ordered.*