NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11858

COMMONWEALTH  vs.  ROBINSON TEJEDA.


Suffolk.     September 10, 2015. - December 2, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Homicide.  Felony-Murder Rule.  Joint Enterprise.  Robbery.
Home Invasion.  Practice, Criminal, Required finding,
Motion for a required finding.



Indictments found and returned in the Superior Court
Department on April 27, 2012.

The cases were tried before Janet L. Sanders, J., and a
motion for a required finding of not guilty was heard by her.

The Supreme Judicial Court granted an application for
direct appellate review.


Dana Alan Curhan (Robert S. Sinsheimer with him) for the
defendant.
Vincent J. DeMore, Assistant District Attorney, for the
Commonwealth.


GANTS, C.J.  The primary issue in this appeal is whether a

defendant who joins with others to commit an armed robbery may

be found guilty of murder on the theory of felony-murder for the killing of his accomplice by someone resisting the armed robbery. We conclude that he may not.

Background. We recite the facts in the light most favorable to the Commonwealth, reserving certain details for our analysis of the issues raised on appeal. On January 14, 2012, the defendant and two friends, Christopher Pichardo and Stephane Etienne, met with Frederick Reynoso, who was to sell them one-half pound of marijuana for $2,200. Together, they traveled in a vehicle the defendant had borrowed from his girl friend to a residence in the Dorchester section of Boston, where the transaction was to take place. Pichardo, Etienne, and Reynoso entered the home through a basement door; the defendant remained outside in the parked vehicle. Reynoso's cousin, Jonathan Santiago, was waiting for them in the basement. Once inside, Santiago weighed the marijuana, placed it into eight one-ounce bags, and handed the bags to Pichardo. Pichardo told Santiago that Etienne would pay him for the marijuana. Etienne dropped his cellular telephone to distract Santiago, and Pichardo then pulled out a .40 caliber semiautomatic handgun from his waistband and told Santiago, "You know what time it is." Reynoso responded by pulling out his own .32 caliber revolver, and a gun battle between Pichardo and Reynoso followed in which

shots were fired from both weapons.  A bullet struck Pichardo on the right side of his chest.

Etienne and Pichardo attempted to leave the basement, but Pichardo collapsed while still inside.  Etienne took Pichardo's firearm and cellular telephone, as well as the marijuana, and ran to the defendant's vehicle, which was parked around the corner.  Etienne and the defendant then returned to the basement and attempted to carry Pichardo back to the vehicle, but they were unable to lift his body.  They ran back to the vehicle and left the scene.  The defendant telephoned 911 from Pichardo's cellular telephone shortly thereafter to inform the police that Pichardo had been shot.  Pichardo was taken from the scene by ambulance and was pronounced dead shortly after arriving at Boston Medical Center.

The police executed a search warrant on the Dorchester residence and recovered a home surveillance system that had captured a video recording of the exterior of the house, which showed the arrival of the defendant, Pichardo, Etienne, and Reynoso, and the aftermath of the shooting.  The police later also executed a search warrant on the defendant's girl friend's vehicle and found approximately thirty bags of marijuana in the trunk.

A Superior Court jury convicted the defendant of murder in the second degree on the theory of felony-murder, with armed

robbery as the underlying felony.[1]  The jury also convicted the
defendant of the armed robbery of Santiago, in violation of
G. L. c. 265, § 17; home invasion, in violation of G. L. c. 265,
§ 18C; and possession of marijuana with intent to distribute, in
violation of G. L. c. 94C, § 32C (a).[2]

The defendant, having earlier moved for a required finding
of not guilty at the close of the evidence, moved after trial
for judgment notwithstanding the verdict on all his convictions.
The judge allowed the motion for a required finding of not
guilty on the felony-murder conviction, but denied the motion as
to the remaining convictions, and later issued a carefully
researched and reasoned memorandum of decision and order
explaining her ruling.  The Commonwealth appealed the judgment
notwithstanding the verdict as to the felony-murder conviction;
the defendant cross-appealed as to the surviving convictions.[3]

---

[1] The indictment alleged murder in the second degree, even
though armed robbery is punishable by life in prison, G. L.
c. 265, § 17, and, as the underlying felony, would support a
conviction of felony-murder in the first degree.  The judge
ruled that the Commonwealth's decision to charge the defendant
with murder in the second degree did not preclude armed robbery
as the underlying felony.  The defendant does not challenge this
ruling on appeal.

[2] The defendant was found not guilty of the armed robbery of
Frederick Reynoso, and of carrying a firearm without a license.

[3] Although the defendant's cross appeal encompasses all
three of the surviving convictions, the defendant does not
challenge in his brief his conviction of possession of marijuana

We allowed the parties' joint application for direct appellate review.

Discussion. 1. <u>Felony-murder</u>. Under our common law of joint venture, a defendant is guilty of armed robbery if he or she knowingly participated in the commission of the crime with the required intent, and either was armed himself or herself or knew that an accomplice was armed. See Commonwealth v. Benitez, 464 Mass. 686, 689 & n.4 (2013). See generally Commonwealth v. Zanetti, 454 Mass. 449, 466-468 (2009). If, during the course of that robbery, for instance, an accomplice were to shoot at a police officer who arrived on the scene but not kill the officer, the defendant could not be found guilty of the crime of assault with intent to murder a police officer unless the defendant knowingly participated with the accomplice in the shooting with the intent to kill, even if the assault were the natural and probable consequence of the armed robbery. See Commonwealth v. Hanright, 466 Mass. 303, 308-309 (2013), quoting Commonwealth v. Richards, 363 Mass. 299, 306 (1973) ("We 'firmly rejected' the argument that a joint venturer should be liable for 'any crime committed by any of his partners which follows naturally and probably from the carrying out of the enterprise'"). However, if that same accomplice had shot and

with intent to distribute. Therefore, we do not address that conviction.

killed the police officer during the course of the robbery, our common law recognizes an exception to the ordinary rule of joint venture criminal liability:  the defendant could be found guilty of the police officer's murder on the theory of felony-murder, even if the defendant did not knowingly participate in the shooting or intend to harm the police officer.[4]  See Hanright, supra at 308-309; Commonwealth v. Watkins, 375 Mass. 472, 486 (1978), quoting Commonwealth v. Devereaux, 256 Mass. 387, 392 (1926) ("it is no defence for the associates engaged with others in the commission of a robbery, that they did not intend to take life in its perpetration, or that they forbade their companions to kill").

The felony-murder exception to the ordinary rule of joint venture liability incorporates two implicit premises.  The first is constructive malice:  the substitution of "the intent to commit the underlying felony for the malice aforethought required for murder."  See Commonwealth v. Gunter, 427 Mass.

---

[4] Felony-murder liability also extends to accidental deaths occurring during the course of an underlying felony so long as the death was a natural and probable consequence of the unlawful activity.  For example, if the police officer in the hypothetical scenario above were to suffer a fatal heart attack from the stress of being confronted by armed robbers, the joint venturers could be found guilty of felony-murder.  See Commonwealth v. Lucien, 440 Mass. 658, 668 (2004) ("If [the victim] had died of fright while the defendant was robbing him, the defendant would be responsible for murder"); Commonwealth v. Evans, 390 Mass. 144, 151-52 (1983) (felony-murder applies where victim was killed by accidental discharge of gun).

259, 271 (1998), S.C., 456 Mass. 1017 (2010) and 459 Mass. 480 (2011), quoting Commonwealth v. Matchett, 386 Mass. 492, 502 (1982).  The second is vicarious criminal liability for every act resulting in death committed by a joint venturer in furtherance of the joint venture, that is, the act of one is treated as the act of all.  See Commonwealth v. Lucien, 440 Mass. 658, 668 (2004); Commonwealth v. Lussier, 333 Mass. 83, 93-94 (1955).  These two legal constructions have defined felony-murder since it was first articulated in English common law in the Eighteenth Century.  See Rex v. Plummer, 84 Eng. Rep. 1103, 1105 (K.B. 1701) ("if divers persons be engaged in an unlawful act, and one of them kills another, it shall be murder in all the rest" provided that "[t]he killing must be in pursuance of that unlawful act, and not collateral to it"); 4 W. Blackstone, Commentaries *200 (" if two or more come together to do an unlawful act against the king's peace, of which the probable consequence might be bloodshed; . . . and one of them kills a man; it is murder in them all, because of the unlawful act, . . . or evil intended beforehand").  See generally Binder, The Origins of American Felony Murder Rules, 57 Stan. L. Rev. 59, 88-98 (2004).

In Commonwealth v. Campbell, 7 Allen 541, 543 (1863), the Commonwealth sought to expand the scope of felony-murder by claiming that a defendant should be vicariously responsible for

the act of someone who was not a joint venturer during the commission of the underlying felony. In Campbell, the defendant had participated in a draft riot during the Civil War where a person was shot and killed, but the evidence was unclear whether the fatal shot had been fired by one of the rioters "with whom the prisoner was acting in concert," or by a soldier inside the armory who was resisting the attack by the rioters. Id. The Commonwealth sought a jury instruction that the defendant may be found guilty of homicide regardless of who fired the shot. Id. We rejected the Commonwealth's argument, declaring, "[n]o person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose." Id. at 544. We explained:

> "The real distinction is between acts which a man does either actually or constructively, by himself or his agents or confederates, and those which were done by others acting not in concert with him or to effect a common object, but without his knowledge or assent, either express or implied. For the former the law holds him strictly responsible, and for all their necessary and natural consequences, which he is rightfully deemed to have contemplated and intended. For the latter he is not liable, because they are not done by himself or by those with whom he is associated, and no design to commit them or intent to bring about the results which flow from them can be reasonably imputed to him."

Id. at 546.[5]

A century later, this court reaffirmed the principle that vicarious liability in felony-murder is limited to the acts resulting in death committed by a joint venturer.  Commonwealth v. Balliro, 349 Mass. 505, 515 (1965), S.C., 370 Mass. 585 (1976).  In Balliro, the defendants broke and entered a home in the night with the intent to commit an assault with a dangerous weapon, but the police were waiting for them inside, and a gunfight resulted in which a mother and her son were killed. Id. at 508-510.  Over the defendants' objection, the judge instructed the jury that, if the defendants "entered and shot first," the death of the two victims was "imputable to these defendants and they are guilty of murder."  Id. at 511.  The judge denied the defendants' request for an instruction that they could not be found guilty unless it were proved that the

---

[5] The principle that a defendant is responsible for the acts of a joint venturer that are committed in furtherance of the joint venture has an evidentiary counterpart in our law of vicarious admissions, which admits in evidence the statements of a joint venturer that are made during the course of and in furtherance of the joint venture, and treats them as if they were statements made or adopted by the defendant.  See Commonwealth v. Bright, 463 Mass. 421, 426 (2012).  See generally Mass. G. Evid. § 801(d)(2)(E) (2015).  The justification for admitting what would otherwise be hearsay is that each joint venturer is an agent of the others in seeking to accomplish the goals of the joint venture, see Bright, supra, and there is a "community of activities and interests" within the agency relationship that "justifies exposing one coventurer to the risk of being incriminated by the utterances of another." Commonwealth v. White, 370 Mass. 703, 712 (1976).

bullets that caused the deaths of the victims were fired by one of the defendants, and not by the police. Id. at 511-512. We noted that our Campbell opinion "appear[ed] to have become the leading case on the subject and has generally been followed in other jurisdictions." Id. at 513, citing People v. Washington, 62 Cal. 2d 777 (1965); Butler v. People, 125 Ill. 641 (1888); Commonwealth v. Moore, 121 Ky. 97 (1905); People v. Wood, 8 N.Y.2d 48 (1960); State v. Oxendine, 187 N.C. 658 (1924). After carefully examining the relevant case law, we reaffirmed the rule in Campbell, "which has been the law of this Commonwealth for more than one hundred years," and declared that a defendant cannot be found guilty of felony-murder "for the death of any person killed by someone resisting the commission of the felony." Id. at 515. We therefore concluded that the judge erred in his instructions to the jury and in declining to give the defendants' requested instructions. Id.

Now, more than fifty years after our Balliro opinion, the Commonwealth again asks us to expand the scope of felony-murder by expanding the scope of vicarious liability to make every joint venturer criminally responsible for every act that results in death that is proximately caused by the underlying felony. Under the Commonwealth's "proximate cause theory," a joint venturer would be vicariously liable for an act resulting in death even if it were committed by a person who was resisting

the underlying felony or attempting to apprehend the persons committing it, provided that resistance or an attempt to apprehend would be reasonably foreseeable by a person initiating the underlying felony, which it always would be. The Commonwealth concedes, correctly, that the majority of other States follow what has become known as the "agency theory" of felony-murder under which the act causing death must be committed in furtherance of the joint venture by the defendant or someone acting in concert with him or her.[6] See W.R. LaFave, Criminal Law § 14.5(d), at 793-794 (5th ed. 2010) (citing cases and noting that "it is now generally accepted that there is no felony-murder liability when one of the felons is shot and killed by the victim, a police officer, or a bystander" [footnotes omitted]). The Commonwealth asks that we join the minority of jurisdictions that impose felony-murder according to the "proximate cause theory." See, e.g., State v. Wright, 379 So. 2d 96, 96 (Fla. 1979); People v. Lowery, 178 Ill. 2d 462, 465 (1997); State v. Oimen, 184 Wis. 2d 423, 434-436 (1994).[7]

---

[6] We note that, in contrast to Massachusetts, many States set out the substantive definition of felony-murder by statute, requiring, at least in part, a statutory analysis not applicable in Massachusetts. See, e.g., Comer v. State, 977 A.2d 334, 337-342 (Del. 2009); People v. Hernandez, 82 N.Y.2d 309, 315-317 (1993); State v. Oimen, 184 Wis. 2d 423, 435, 436 (1994).

[7] The Commonwealth also notes that, in Santiago v. Commonwealth, 428 Mass. 39, 43-44 & n.5 (1998) (Santiago II), we expressed "grave doubt as to the continuing validity of the

As noted earlier, the common law of felony-murder is already an exception to our law of joint venture in that it deems the intent to commit the underlying felony as a substitute for the intent generally required for murder, and makes every joint venturer vicariously liable for the acts of his or her accomplices that result in death and that are committed in furtherance of the joint venture. Indeed, for these reasons the common law of felony-murder is an exception to two basic principles of our criminal jurisprudence. See Hanright, 466 Mass. at 309 ("the felony-murder rule operates according to a unique set of principles"). First, generally we require proof of a defendant's intent to commit the crime charged, and do not conclusively presume such intent from the intent to commit

principle set forth in [Commonwealth v.] Campbell," 7 Allen 541 (1863), that a defendant may not be found guilty of murder unless the defendant or a joint venturer committed the killing. In Commonwealth v. Santiago, 425 Mass. 491, 503 (1997), S.C., 427 Mass. 298 (1998) and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998) (Santiago I), we held that "where the defendant chooses to engage in a gun battle with another with the intent to kill or do grievous bodily harm and a third party is killed, the defendant may be held liable for the homicide even if it was the defendant's opponent who fired the fatal shot." In Santiago I, however, the juvenile was adjudicated delinquent of murder in the first degree on the theory of deliberate premeditation, not on the theory of felony-murder. See id. at 502, 505. The court in Santiago II specifically emphasized that "Santiago I does not contemplate holding the juvenile liable for his opponent's acts on a joint venture theory," but rather states that "the juvenile may be found delinquent for his own act, namely, engaging in the shootout that caused the victim's death" (emphasis in original). Santiago II, supra, at 44 n.4. The "grave doubt" expressed by the Court in Santiago II must be considered in this context.

another crime.  See, e.g., id. at 308-309 ("The intent to commit armed robbery, although sufficient to support liability for felony-murder on a theory of joint venture, is insufficient to support liability for" additional offenses against other surviving police officers who attempted to apprehend accomplice); Richards, 363 Mass. at 302, 307-308 (defendant who was waiting near getaway car in armed robbery may be found guilty of assault with intent to murder police officer committed by accomplice only if defendant had specific intent to kill police officer).

Second, generally "[o]ne is punished for his own blameworthy conduct, not that of others."  Richards, supra at 306, quoting Commonwealth v. Stasiun, 349 Mass. 38, 48 (1965). Only where a dangerous felony results in death do we adopt a principle that we otherwise have "firmly rejected" -- that a person who knowingly participates in one crime as part of a joint venture is "ipso facto also guilty" of all other crimes committed by an accomplice in furtherance of the joint venture. Richards, supra.  See Hanright, 466 Mass. at 307-310, quoting 2 W.R. LaFave, Substantive Criminal Law § 13.3(b), at 362-363 (2d ed. 2003) ("we remain committed to the view that . . . A's guilt as an accomplice to one crime should not per se be a basis for holding A accountable for a related crime merely because the latter offense was carried out by A's principal").  Contrast

<u>Pinkerton</u> v. <u>United States</u>, 328 U.S. 640, 646-647 (1946) (conspirator is criminally responsible for all substantive offenses committed by coconspirators in furtherance of conspiracy).

Adoption of the Commonwealth's proximate cause theory would essentially cause our law of felony-murder to depart even further from the second basic principle:  it would extend vicarious accomplice liability to acts that were not committed by accomplices, and that were committed not to further the joint venture but to thwart it.  We need not decide here whether our common law of felony-murder should continue to be an exception to our basic principles of criminal jurisprudence, or whether we should join those who have abolished or redefined felony-murder.[8,9]  But we would need persuasive reasons to justify an

---

[8] We have criticized the felony-murder rule in the past for divorcing moral culpability from criminal liability and for the harsh consequences it imposes for unintended or accidental killings.  <u>Commonwealth</u> v. <u>Matchett</u>, 386 Mass. 492, 503 n.12, 506-507 (1982) (noting that common-law felony-murder rule is of "questionable origin" and detailing limitations placed on doctrine by other jurisdictions).

[9] Great Britain, the nation where the common law of felony-murder was born, has abolished felony-murder by statute, providing that "[w]here a person kills another in the course or furtherance of some other offence, the killing shall not amount to murder unless done with . . . malice aforethought . . . ."  Homicide Act of 1957, 5 & 6 Eliz. 2, c. 11, § 1.  So have Hawaii and Kentucky.  See 7A Hawaii Rev. Stat. § 707-701 commentary; Ky. Rev. Stat. Ann. § 507.020 1974 commentary.  Michigan has abolished felony-murder under its common law.  <u>People</u> v. <u>Aaron</u>, 409 Mich. 672, 727-729 (1980).  Other States have not abolished

expansion of what is already an unusual doctrine.  The reasons

offered by the Commonwealth are not persuasive.

First, the Commonwealth contends that the proximate cause

theory should be applied to the common law of felony-murder

because it comports with the scope of liability in civil cases

and reflects the causation standard that would apply in a civil

case brought by the decedent against the joint venturers.[10]  The

purpose of civil liability, however, is to fairly compensate a

plaintiff for injuries caused by the wrongful or negligent

---

the doctrine but have significantly departed from the
traditional formulation.  See, e.g., State v. Doucette, 143 Vt.
573, 582 (1983) (holding that felony-murder requires proof of
malice, but that malice can be inferred "from evidence presented
that the defendant intentionally set in motion a chain of events
likely to cause death or great bodily injury, or acted with
extreme indifference to the value of human life"); Del. Code
Ann. tit. 11, §§ 635, 636 (2007) (requiring defendant to act
with recklessness, for murder in the first degree, or criminal
negligence, for murder in the second degree); N.Y. Penal Law
§§ 125.25(3), 125.27 (McKinney 2009) (setting forth affirmative
defense where joint venturer rather than defendant commits act
causing death).  The Model Penal Code also has abandoned the
traditional doctrine of felony-murder, requiring the homicide to
be purposeful, knowing, or reckless in order to constitute
murder, but providing for a rebuttable presumption of
recklessness where the homicide occurred during the commission
of certain felonies.  Model Penal Code §§ 1.12(5), 210.2(1)(b)
(1985).  See also Matchett, 386 Mass. at 503 n.12.

[10] We note that causation may also be an issue under the
agency theory of felony-murder.  To return to an earlier
hypothetical scenario, if a police officer suffered a heart
attack attributable to the stress of confronting armed robbers
and died after receiving negligent medical care, the question
whether there was a sufficient causal relationship between the
joint venturers' act and the resulting death would arise under
both the agency and proximate cause theories.

conduct of another. In light of that purpose, it is reasonable that, where a person is killed during the course of an armed robbery by someone seeking to resist it, the burden of loss should be imposed on those who committed the armed robbery and thereby set in motion the chain of events that proximately caused the death. In contrast, the purpose of criminal liability is to punish persons found culpable for their wrongful conduct, and that punishment is most severe when a person is found guilty of murder. Given the "fundamentally different purposes of criminal law and tort law," Commonwealth v. Godin, 374 Mass. 120, 127 (1977), cert. denied, 436 U.S. 917 (1978), and the extreme penalties and infamy associated with a conviction of murder, it is not reasonable to expand the scope of felony-murder to punish a defendant for conduct that neither the defendant nor an accomplice committed or intended. See Campbell v. State, 293 Md. 438, 450-451 (1982) ("Tort law is primarily concerned with who shall bear the burden of loss, while criminal law is concerned with the imposition of punishment"); State v. Canola, 73 N.J. 206, 226 (1977) ("Tort concepts of foreseeability and proximate cause have shallow relevance to culpability for murder in the first degree").

Second, the Commonwealth argues that, "[b]y holding defendants responsible for deaths caused when they engage in activities which are 'inherently dangerous to human life,'

Commonwealth v. Moran, 387 Mass. 644, 651 (1982), we deter individuals from creating scenarios which may result in death." We doubt that persons contemplating a dangerous felony would be significantly deterred by the possibility that, if a person were to be killed by someone seeking to thwart or apprehend them, they might be found guilty of felony-murder.  If they thought that they likely faced the risk of death from someone seeking to resist or arrest them, that risk would be the more potent deterrent.  See Washington, 62 Cal. 2d at 781 ("An additional penalty for a homicide committed by the victim would deter robbery haphazardly at best").

Third, the Commonwealth contends that someone should be found guilty of murder for a violent death and, without the proximate cause theory of felony-murder, there is the risk that no one will be punished for the death of a bystander mistakenly shot by an armed robbery victim or by a police officer, because the victim and the police officer may have been justified in their use of force against the robbers.  It is true that, in these circumstances, it is likely that no one will be found guilty of murder.[11]  But that does not mean that the joint

_____

[11] We acknowledge the possibility that, in circumstances where a defendant committing an underlying felony engages in conduct so dangerous that "a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow," the Commonwealth might obtain a murder conviction based on the third

venturers will escape punishment.  Armed robbery is a life felony under Massachusetts law, see G. L. c. 265, § 17, and the death is likely to be treated as an aggravating factor by a judge imposing sentence on the armed robbery conviction. Moreover, a tragic death does not always justify a murder conviction; the law recognizes that a person is guilty of manslaughter, not murder, punishable by up to twenty years in prison rather than a life sentence, where the killing is committed intentionally under mitigating circumstances or unintentionally but recklessly.  See G. L. c. 265, § 13.  See also Model Jury Instructions on Homicide 64-79 (2013).  In circumstances where a defendant committing an underlying felony engaged in reckless conduct that "created a high degree of likelihood that substantial harm will result to another person," the Commonwealth might obtain an involuntary manslaughter conviction.  Id. at 74.

More than fifty years ago, in Balliro, 349 Mass. at 515, we were presented with the same question that we are presented with today:

> "The basic question is whether a felon can be held
> criminally liable for the death of any person killed by
> someone resisting the commission of the felony."

---

prong of malice.  See Commonwealth v. Woodward, 427 Mass. 659, 669 n.14 (1998).

For the reasons stated, our answer is the same as it was in Balliro:  "We hold that he cannot be."  Id.  We therefore affirm the judge's allowance of a judgment of acquittal notwithstanding the verdict regarding the conviction of felony-murder in the second degree.[12]

2.  Sufficiency of the evidence of armed robbery and home invasion.  The defendant also challenges the sufficiency of the evidence supporting his convictions of armed robbery and home invasion, claiming that no reasonable jury could find beyond a reasonable doubt that he knew that Pichardo and Etienne intended to rob the sellers of the marijuana or that either was armed.  See Commonwealth v. Britt, 465 Mass. 87, 100 (2013) (where

_____

[12] We recognize that the current model jury instructions regarding felony-murder promulgated by this court do not provide adequate guidance to a jury in the circumstances presented in this case.  The trial judge in this case appropriately provided the jury with, in essence, the current model jury instruction on felony-murder, which instructs the jury that the Commonwealth must prove the defendant committed a felony, that the felony was inherently dangerous or committed with conscious disregard to human life, and that "the killing occurred during the commission or attempted commission of the underlying felony . . . [and] in connection with the felony and at substantially the same time and place."  Model Jury Instructions on Homicide 54-56 (2013).  Such an instruction would allow a jury to convict a defendant where, as here, a joint venturer is killed during the commission of a felony by a victim or other person resisting the felony, and therefore does not accurately state the law of felony-murder in the Commonwealth where there is an issue whether the victim was killed by a joint venturer or by a person seeking to resist or arrest.  We shall revise the model jury instructions to address this issue.  Until the revised instructions are published, we direct judges to depart from the model jury instruction regarding felony-murder to reflect the law as stated in this opinion.

element of offense is that perpetrator is armed, Commonwealth must prove that defendant knew that at least one joint venturer was armed); Zanetti, 454 Mass. at 466-467 (2009) (Commonwealth required to prove that defendant knowingly participated in crime charged with intent required for that offense).  Rather, the defendant argues, the evidence was sufficient only to show that the defendant knew that he was driving Pichardo and Etienne to purchase marijuana.

When reviewing the denial of a motion for a required finding of not guilty, we must determine "whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged."  Commonwealth v. Lao, 443 Mass. 770, 779 (2005) S.C., 450 Mass. 215 (2007), and 460 Mass. 12 (2011), quoting Commonwealth v. Campbell, 378 Mass. 680, 686 (1979), S.C., Commonwealth v. Doherty, 411 Mass. 95 (1991), cert. denied, 502 U.S. 1094 (1992).  Here, Alvin Bernardez, who described himself as Pichardo's "best friend" and "at one point" a friend of the defendant, testified that the defendant informed Bernardez of the circumstances surrounding Pichardo's death during a telephone call initiated by the defendant on the day after the killing and a subsequent in-person conversation.  Bernardez

testified that the defendant said that the defendant, Pichardo, and "another kid named Stephan" went to Dorchester "to catch a lick," and "it went wrong and [Pichardo] was shot." Bernardez explained that "catch a lick" was a slang term for a robbery. See Commonwealth v. Dyous, 436 Mass. 719, 721, 729 (2002) (witness allowed to testify that he understood defendant's use of term "wet them up" to describe desire to kill). Bernardez testified that the defendant told him that "[t]hey went to rob someone for a couple of O's," which Bernardez later explained meant ounces of "weed." The defendant told Bernardez that "Stephan" set up the robbery, Pichardo was the "robber," and the defendant was the driver. Further, the defendant, in a videotaped interview with police, stated that he knew that Pichardo "ripped people off" to supplement his income from work, and that he had seen Pichardo with a few guns, although he denied seeing Pichardo with a gun on the day of the shooting.

From this evidence, a reasonable jury could infer that the defendant knew that the plan to purchase marijuana from Reynoso was, in fact, a ruse to steal the marijuana and that he would be driving Pichardo and Etienne to and from the robbery. A reasonable jury could also infer that the defendant knew that Pichardo was armed, because he had earlier seen him with guns and knew that Pichardo's role was to be the "robber" who might need to use force to overcome any resistance by the drug

sellers. This evidence, viewed in the light most favorable to the prosecution, was sufficient for the jury to conclude beyond a reasonable doubt that the defendant knowingly participated in the armed robbery and home invasion with the intent required for these offenses, and knew that Pichardo would be armed. See Commonwealth v. Chay Giang, 402 Mass. 604, 608-610 (1988) (knowing participation could be inferred from surrounding circumstances where defendant served as getaway driver). The defendant claims that his conversations with Bernardez only reflected what he knew after the shooting, not what he understood at the time of the offenses, but a jury reasonably could have rejected this interpretation based on Bernardez's description of the conversation, including Bernardez's assertion that the defendant "knew what the ride was for."

Conclusion. The judge's order allowing the defendant's motion for a required finding of not guilty on the indictment charging felony-murder in the second degree is affirmed, as is the judge's order denying the defendant's motion for a required finding of not guilty on the remaining convictions.

So ordered.