Christopher Pichardo was shot and killed while committing an armed robbery with the defendant and Robinson Tejeda. Following a jury trial in the Superior Court, the defendant was convicted of second degree felony-murder, armed robbery, home invasion, possession of a class D substance and carrying a firearm without a license.[2] On appeal he claims that (1) his motion to suppress his statements should have been allowed, (2) the prosecutor's questions to three trial witnesses created a substantial risk of a miscarriage of justice, (3) the judge erred in instructing the jury to disregard a portion of defense counsel's closing argument, and (4) the evidence was insufficient on the firearm charge. We affirm.
Discussion. 1. Motion to suppress. Before trial, the defendant moved to suppress two recorded statements he gave to Boston police detectives, claiming that they were involuntary. The motion judge, who was not the trial judge, held an evidentiary hearing and made factual findings that the defendant does not challenge. We summarize those findings.
On February 13, 2012, the defendant, then eighteen years old, called the Boston Police Department and asked to speak with an officer about Pichardo's death. The defendant agreed to participate in a recorded interview with Detectives Kevin Doogan and Tod Herron. Doogan gave the defendant Miranda warnings even though the defendant was not under arrest. The tone of the interview was calm and businesslike, the defendant spoke clearly and freely, and he was not impaired by drugs or alcohol. The detectives did not pressure or coerce him. The defendant returned home after the interview ended. Thereafter, on March 23, 2012, the defendant was arrested and transported to Boston Police Headquarters. He was placed in an interview room with Doogan and Herron, who again administered Miranda warnings. The defendant read, and indicated that he understood, each warning. The detectives did not engage in coercive or threatening conduct as the defendant gave a second recorded statement.
Based on these facts, the motion judge, concluding that both of the defendant's statements to the police were voluntary, denied the motion to suppress. The defendant claims that the judge erred by failing to adequately consider the defendant's age and susceptibility to pressure from the detectives and third parties. We discern no error in the motion judge's application of constitutional principles to the facts as he found them. See Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).
The motion judge found that the detectives did not pressure the defendant or coerce him in any way. Based on the record before us, we "cannot say that the will of the defendant was overborne" by anything the detectives did. Commonwealth v. Libby, 472 Mass. 37, 48 (2015). There was no evidence that the defendant's age prevented him from understanding or appreciating the circumstances -- to the contrary, he discussed his experience with law enforcement officers and the court system, and his answers indicated an awareness of the consequences of speaking with the police.
The motion judge considered the defendant's argument that his statements were involuntary because he was threatened by Tejeda and "people in Lynn," but he concluded that the alleged threats did not render the defendant's statements involuntary because "no one threatened the defendant for the purpose of getting him to make an incriminating statement to the police." Rather, the judge found that any threats to the defendant were based on a suspicion that he had "set up" Pichardo or abandoned him after he was shot. While the defendant may disagree with the judge's conclusion, it was based on the judge's assessment of the credibility and weight of the evidence presented. On those issues, we defer to the motion judge. Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990).
2. Prosecutor's questions. The victims of the armed robbery, Jonathan and Luis Santiago, were charged with drug offenses after police seized marijuana and cocaine at their residence. At trial, the Santiago brothers testified for the Commonwealth pursuant to plea and cooperation agreements.[3] On direct examination, the prosecutor asked Jonathan and Luis Santiago about their pending criminal charges and whether the district attorney's office had offered them consideration in exchange for "testifying truthfully." Both answered "yes." The defendant did not object, but now claims that the prosecutor's "repeated reference" to truthful testimony created a substantial risk of a miscarriage of justice. While we agree with the defendant that the prosecutor should not have asked these questions in her direct examination, see Commonwealth v. Ciampa, 406 Mass. 257, 264 (1989), we see no substantial risk that justice miscarried.
The prosecutor's references to the Santiago brothers' obligations to testify truthfully were not repeated. After the witnesses answered the question, there was no further comment on the matter. At the charge conference the defendant did not object to the Commonwealth's request for the model instruction on plea and cooperation agreements, which contained the same language regarding truthful testimony. The judge gave the model instruction, which included the statement "that the Commonwealth does not know whether these witnesses are telling the truth." Considering these instructions and the strength of the evidence against the defendant, we cannot reasonably say that the prosecutor's single, improper reference to truthful testimony could have "materially influence[d] the guilty verdict." Commonwealth v. Alphas, 430 Mass. 8, 13 (1999), quoting Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).
The defendant also claims that the prosecutor asked improper leading questions to elicit inadmissible evidence from trial witness Alvin Bernardez. Bernardez testified to the defendant's admission that on the day of the robbery, he, Tejeda, and Pichardo went to "catch a lick," that is, to participate in a robbery. After Bernardez explained his conversation with the defendant in more detail, the prosecutor asked, "[A]t any point, did [the defendant] tell you that he was not part of the robbery?" She then asked, "Did [the defendant] ever tell you that he didn't know what was going on?" Over the defendant's objection, Bernardez was allowed to answer both questions, "No, he didn't."
Assuming without deciding that the prosecutor's questions could be characterized as leading, the judge did not abuse her discretion in allowing them. See Commonwealth v. Casiano, 70 Mass. App. Ct. 705, 710 n.13 (2007), quoting Commonwealth v. Peloquin, 30 Mass. App. Ct. 960, 961 (1991) ("It has long been held that the decision whether to allow leading questions should be left for the most part to the wisdom and discretion of the trial judge").[4] Nor are we persuaded by the defendant's claim that the prosecutor sought through these questions to introduce inadmissible admissions by silence, as there was no evidence that Bernardez made an accusation to which the defendant would have been expected to respond. See Commonwealth v. Shea, 460 Mass. 163, 170-171 (2011) (admission by silence requires evidence that the party heard and understood an accusation that a reasonable person would challenge). In light of the defendant's incriminating statements to Bernardez, his statements to the police, and the video surveillance evidence that established his presence at the scene of the robbery, admission of this evidence did not create a substantial risk of a miscarriage of justice.
3. Curative instruction. In her closing argument, defense counsel urged the jury not to credit the Santiagos' testimony because the police had given them a "get out of jail free card." Defense counsel continued:
"Now that's not money, ladies and gentlemen, but what amount of money would you pay not to spend three years in state prison? What amount of money? Do you think there's any question that these officers bought, bought the cooperation and the testimony of these witnesses? Think, think about what they had to say."
After counsel concluded her argument, the judge instructed the jury "to disregard any inference that you may have drawn" from defense counsel's suggestion that the police officers bought the testimony of the Santiagos. The defendant claims this curative instruction was prejudicial error.
"[W]e consistently have held that, where the credibility of a witness is in issue, counsel may argue from the evidence why a witness should [or should not] be believed" (quotation omitted). Commonwealth v. Smith, 460 Mass. 385, 399 (2011). Here, we think it plain enough that defense counsel was arguing by analogy that the Commonwealth "bought" the Santiagos' testimony by offering them plea and cooperation agreements. This argument was a fair comment on the witnesses' credibility, and the curative instruction as given was unnecessary. However, we see no appreciable prejudice resulting from the instruction. The question of the Santiagos' credibility was placed squarely before the jury prior to and after closing arguments. The brothers were cross-examined extensively regarding the nature of their plea and cooperation agreements and the lenient treatment they anticipated in exchange for their testimony. The judge properly instructed the jury that they should evaluate the Santiagos' testimony with particular care considering the cooperation agreements "and any hopes the [Santiagos] may have as to future advantages from the prosecution in evaluating [their] credibility." In these circumstances, the jury had ample opportunity both to consider the benefits conferred by the plea agreements and to assess the Santiagos' credibility in light of those benefits.
4. Firearm indictment. The defendant's final claim requires little discussion. The Commonwealth had no obligation to introduce evidence that the defendant did not have a firearm identification card because he made no showing that he was licensed to carry a firearm. Commonwealth v. Blanchard, 476 Mass. 1026, 1029 (2017).
Judgments affirmed.

The defendant's conviction of second degree felony-murder was vacated following the verdict. Tejeda was also convicted of felony-murder, among other charges. A different Superior Court judge allowed Tejeda's motion for a required finding of not guilty on the murder indictment, and that decision was affirmed on appeal while Etienne's case was pending. See Commonwealth v. Tejeda, 473 Mass. 269 (2015). A summary of the underlying facts is set forth in Tejeda, at 269-270.

The written plea and cooperation agreements were not introduced in evidence.

The defendant moved for a mistrial on the basis of leading questions and claims error in the denial of that motion. However, he does not argue the issue in his brief and therefore we decline to address it, Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), other than to say that denial of the motion did not create a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 294 (2002) (unpreserved claims reviewed under substantial risk standard).